## Provident Life & Trust Company *v.* Durham, Appellant.

*Taxation — Corporations — Assessment — Trust company — Insurance assets—Acts of June 8, 1891, P. L. 229, June 8, 1893, P. L. 353, June 1, 1889, P. L. 420—February 18, 1869, P. L. 194.*

On a bill in equity for an injunction against tax assessors it appeared that the plaintiff was a trust company which also conducted a life insurance business as a department of its business. It paid the five mills tax upon the assessed value of its capital stock under the Act of June 8, 1891, P. L. 229 as amended by the Act of June 8, 1893, P. L. 353 and also the four mills state tax on the bonds, mortgages and other securities held by it as trustee, executor, administrator and guardian. The defendants sought to assess the company with a four mills tax upon a fund of $31,646,779.17 invested in bonds, mortgages and other securities, and held by it as a reserve fund accumulated in its insurance department to offset maturing risks and like valid demands. The defendants contended that under the Act of February 18, 1869, P. L. 194, these insurance assets were not owned by the corporation, but represented net profits of the insurance department. *Held*, that the insurance assets were not a part of the net profits of the insurance department within the meaning of the act of February 18, 1869, but were owned by the corporation in its own right, and not taxable under the Act of June 8, 1891, P. L. 229.

DEAN and POTTER, JJ., dissent.

Argued Jan. 9, 1905. Appeal, No. 131 Jan. T., 1904, by defendants, from decree of C. P. No. 2, Phila. Co., Dec. T., 1900, No. 751, on bill in equity in case of Provident Life & Trust Company v. J. Wesley Durham and H. Gilbert Cassidy, assessors, and Simon Gratz, Rinaldo A. Lukens and Isaac H.

Shields, members of the board of revision of taxes. Before
MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT and
POTTER, JJ.  Affirmed.

Bill in equity for an injunction.

The bill averred

That plaintiffs are a Pennsylvania corporation chartered to
conduct the business of a life insurance company and also of
a trust company.

That defendants are real estate assessors and members of
the board of revision of taxes.

That the acts of 1889, 1891 and 1893 provide for a four
mills tax on certain classes of personal property, but exempt
therefrom corporations paying a capital stock tax, which tax
plaintiffs have always paid.

That defendants claim the right to tax insurance assets
own by plaintiffs, aggregating $31,646,779.17, and threat-
en to impose also a penalty of fifty per cent thereon, unless
report made thereof, whereupon a report was made under pro-
test.

That defendants now claim to recover the four mill tax on
those assets, though plaintiffs are exempted from that tax be-
cause of the payment of the capital stock tax, and though the
recovery thereof from plaintiffs would be discriminative and
unjust in favor of other corporations, and therefore violate the
uniform taxation clause of the constitution of this state, and the
due process of law clause of the constitution of the United States,
and because also the first section of the acts of 1889 and 1891,
imposing the personal property tax, violate also the same con-
stitutional provisions.

That plaintiffs have regularly paid the eight mills tax on
their gross insurance premiums in addition to the capital stock
tax.

That defendants intend to return the $31,646,719.17 of
assets for taxation to the board of revenue commissioners,
who will thereupon assess and collect a tax thereupon, and
plaintiffs will be exposed to litigation and their property to
levy and great and irreparable loss ; that this course will be
pursued yearly, and plaintiffs will have to pay, and rely upon
their ability to recover back from the defendants personally.

The bill prayed an injunction against defendants and a decree that these assets are not liable to the four mills tax.

The defendants filed an answer denying the right to the relief claimed by the plaintiff.

The case was heard by WILTBANK, J., who found numerous facts and conclusions of law and filed the following opinion :

The proposition advanced by the plaintiff corporation may we think be formulated thus : that under the revenue act of June 1, 1889, P. L. 420, and June 8, 1891, P. L. 229, inasmuch as it has paid the tax upon its capital stock, the property of which return was made under protest to the defendants, valued at $31,646,779.17, is not taxable, because within the class described by the later act as mortgages, bonds and other securities owned by it in its own right ; that, independently of this proposition, that property comprises various kinds of assets, each upon varying considerations not assessable by the defendants ; that if the second proposition is not sustained, and also the act of 1891 in the clause invoked does not apply, an examination of the act of 1891 shows it to be unconstitutional.

The system of assessment of corporation assets for purposes of revenue contemplates three classes to wit : first, the assets involved in the calculation of the appraised value of the capital stock ; second, the assets held by the corporation in its own right, perhaps identical with the former class or perhaps including that and something more, the excess representing property answerable for liabilities of the corporation ; third, the assets held in trust. The defendants contend that the property of which return was made by the plaintiffs is taxable as assets held in trust, in addition to assets of $6,455,242 already returned by it specifically as held in that relation.

These contentions are based upon a proviso of the twenty-first section of the act of June 1, 1889, as amended by the act of June 8, 1891, and re-enacted by the Act of June 8, 1893, P. L. 353, which proviso is as follows : Provided also, that corporations, limited partnerships and joint-stock associations, liable to tax on capital stock under this section, shall not be required to make report or pay any further tax on the mortgages, bonds and other securities owned by them in their own right, but corporations, limited partnerships and joint-stock associations, holding such securities as trustees, executors,

administrators, guardians or in any other manner, shall return and pay the tax imposed by this act upon all securities so held by them as in the case of individuals.

This legislation exemplifies the method or system of taxation of property inaugurated in Pennsylvania by the Act of June 7, 1879, P. L. 112, which was followed by the Acts of June 10, 1881, P. L. 99, and June 30, 1885, P. L. 193. (Mr. Justice MITCHELL in Fidelity Ins., etc., Co. v. Loughlin, 139 Pa. 612, 617.) The principle of the act of June 8, 1891, is clear, to wit: that a corporation is to be taxed for purposes of revenue just as an individual or private citizen is to be taxed, according to its assets; and so as to be in this respect on a footing of equality with all corporations of the commonwealth, and also to be free from double taxation. That each citizen must contribute to the public revenue, and that a corporation doing business must contribute as a private citizen must, are made apparent by the statutes; and the general doctrine is an enlightened one and, as we think, in this state practically exhibited in legislation which is just and at length equitably comprehensive. Criticisms by the Supreme Court, such as are found in Fox's Appeal, 112 Pa. 337, and Fidelity Ins., etc., Co. v. Loughlin, 139 Pa. 612, have doubtless assisted the legislature. A corporation is treated and taxed as an owner of property represented by its capital stock. If in the course of its business under its charter it has the legal title to property of others, that property is also taxed under certain circumstances, but the tax falls upon the parties having the title in equity. Hence when we enter upon an examination of the case at bar, we ask, what assets were contemplated in making up the value of the capital stock of the plaintiff, and what assets did it hold for people for whom it acted in a fiduciary capacity? A distinction at once suggests itself: the undisputed and unquestionable findings of fact show that the capital of this plaintiff is $1,000,000; that the market value of its capital stock is $5,100,000; that its assets free from the estimation of its capital stock, that is to say, practically set aside for its liabilities in the commercial appraisement of the capital stock, are $31,-646,779.17. There is thus a variance which we shall discuss. But with regard to property held in trust there cannot arise this variance. The appraisement of trust assets involves noth-

ing more than the ascertainment of values, usually (for taxation in Pennsylvania) of par values, and if not this, then of values in the market.

The distinction turns on the point of liabilities. In the assessment of stocks, bonds, other investments, real or personal, of a trust estate, the indebtedness of the trust estate owning them is not a consideration. They may be assets for the payment of debts, it is true, but no amount of indebtedness of the man who controls them can prejudice or increase their value. This is determined by standards having no relation whatever to the solvency of him who may have the right to dispose of them. Thus far the situation of a trading corporation is similar. No amount of its indebtedness can prejudice or increase the value of the stocks, bonds, other investments, real or personal, which it controls and may dispose of. But the situation of a trading corporation involves a stage beyond this; assuming the assets described as of a given value, unaffected by the financial condition of their owner, what is their availability in trade as capital of the trading corporation? The problem, then, is the assessment, not of the capital, but of these assets as the capital stock; and this requires an ascertainment of the liabilities, to meet which assets must be set apart, and thus found unavailable pro tanto for other use. The value of a business capital is ascertained in the market upon allowance of many considerations, among which is the volume of debts of the business.

It is no longer an open question that this discrimination in the estimate of the values of the property of private citizens and of artificial bodies, whereby the liabilities are disregarded in one case and taken as factors in the other, is consistent with the rule of the constitution, that all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax. Corporations and individuals must stand as citizens, equally liable to taxation, but they are not of the same class. It was said in Pullman Palace Car Co. v. Commonwealth, 107 Pa. 156, "While a tax on the capital stock of a company is a tax on its property and assets, yet the capital stock of a company and its property and assets are not identical."

In Fox's Appeal, 112 Pa. 337, it was said, "It has been re-

peatedly decided in this state and is settled law that a tax upon the capital stock of a corporation is a tax upon its property and assets. It would be an affectation of learning to refer to the long line of cases asserting this doctrine; it is sufficient to refer to Commonwealth v. Standard Oil Company, 101 Pa. 119."

In Commonwealth v. Standard Oil Co., 101 Pa. 119, 145, the Supreme Court cites twenty-seven authorities on the point. In the L. S. and M. S. R. R. Co. case, 11 Pa. Dist. Rep. 318, SIMONTON, J., said, "The property and capital stock are not identical, and it is the latter which is to be valued and taxed in this case." The underlying principle of appraisement of stock according to market value in all these rulings, that the word assets means things of value to the corporation after an estimate of, or allowance for, its liabilities, is formulated by the same high authority in Commonwealth v. Lake Shore, etc., R. R. Co., 3 Dauphin County Reports, 172. "Under the act of June 8, 1891, the question of the actual value in cash of the capital stock of a corporation is a question of fact which must be determined by considering the value of defendant's tangible property and assets of every kind, including its bonds, mortgages and moneys at interest, and its franchises and privileges; and the amount of incumbrances on its property and franchises is also a relevant fact to be considered, but is not to be specifically deducted from the valuation so ascertained and determined."

The Act of June 1, 1889, P. L. 420, was, as long as without amendment, open to criticism in some particulars, and the argument urged upon us is reasonable that judicial comment in Fidelity Ins., etc., Co. v. Loughlin, 139 Pa. 612, was before the legislature in the framing of the amendatory Act of June 8, 1891, P. L. 229. The original provisions subjected a corporation to the risk of double taxation, because of an apparent oversight of the fact that assets must be allowed for as specifically untaxable if necessary to meet liabilities. The fourth proviso of the act of June 1, 1889, saved property of corporations "belonging to them and constituting any portion of their assets included within the appraised value of their capital stock." The Supreme Court, by Mr. Justice MITCHELL, said in the case last cited: "The proviso applies to all mortgages of corporations of either class, included in the valuation of stock prescribed by

either section 20 or section 21, and so read it carries out its plain intent of preventing double taxation. Under what circumstances there may be any mortgages not so included in the appraised value, we need not now inquire. If there should at any time be any such, they will be taxed under section 1." That a corporation may own mortgages and other securities not affecting the market value of its capital stock, not necessarily taken into the calculation of that value, is difficult to understand, as this authority, we might say, this warning against double taxation, indicates. "The capital stock is nothing," said the Supreme Court in Fox's Appeal, 112 Pa. 337, "a myth; a mere name excepting in so far as it is represented by investments made with the money paid into the treasury of the corporation on account of such capital stock. Hence it is that the courts have long since declared that a tax upon the capital stock of a corporation is a tax upon the assets and property of such corporation."

The act of June 8, 1891, was intended, among other things, to avoid the uncertainty involved in the possible case of property "not so included in the appraised value," and which, therefore, "if there should at any time be any such," would "be taxed under section 1." It struck out the phrase, "constituting any portion of their assets included within the appraised value of their capital stock," and substituted, "shall not be required to make report or pay any further tax on the mortgages, bonds and other securities owned by them in their own right." The word further, is, in this connection, conclusive of the legislative understanding.

It is admitted that the plaintiff has paid the tax due upon its capital stock, and the proofs have shown that an original value of $1,000,000 has increased in the market, upon a commercial estimate of the availability of its property and assets, which must necessarily allow for its liabilities, to $5,100,000. This appraisement has been approved and accepted by the authorities, who have taken the tax thereon. The sum of $31,646,779.17, which is the subject of the present dispute, has a relation to this appraisement, as also has the sum of $43,009,633.21, representing the contingent obligations of the plaintiff in its insurance business. According to the proofs we must hold that these items of assets and liabilities were

factors in the calculation of the market value of the capital stock, and that the $31,646,779.17 are held by the plaintiff in its own right, not as the net profits of the insurance department, but as a fund to offset maturing risks and like valid demands.

This fund cannot be regarded as held in trust for others within the meaning of the act of assembly. Nothing justifies a judgment that the legislature meant other than trusts known as such in virtue of their creation, express trusts, under defined conditions, in favor of specified persons, and not quasi trusts arising by implication of law, as, for instance, upon the foundation of an insolvent's obligations to his creditors. The act contemplates two classes of assets, those to which the corporation holds title in its own right, and those to which it holds title for others : its debts are payable out of the former class ; a reserved fund, or a fund regarded in the conduct of the business as applicable to demands likely to arise upon the maturing of policies of life insurance, remains of this class. The assets held by a solvent corporation in its own right cannot in any just or legal sense be said to be held by it in trust either for creditors or stockholders. Solvent, it holds its property as any individual holds his, free from the touch of a creditor who has acquired no lien; free also from the touch of a stockholder who, though equitably interested in, has no legal right to, the property : Hollins v. Brierfield Coal & Iron Company, 150 U. S. 371 (14 Sup. Ct. Repr. 127).

These general principles are assented to by the defendants, who, however, direct attention to so much of the charter of the plaintiff corporation as we find in the amendatory act of February 18, 1869, which reads as follows : " That the first section of the act, to which this is a supplement, shall be amended by adding thereto the following provision, viz. : And all the net profits to be derived from the business of life insurance, after deducting the expenses of the company, shall be divided pro rata among the holders of the policies of such life insurance, equitably and ratably, as the directors of said company shall and may, from time to time, ascertain, determine and report the same for division."

In view of our findings of fact from the proofs it cannot be said that the sum of $31,646,779.17 represents net profits de-

rived from the business of life insurance, and it is not claimed that any division thereof has been ascertained, determined and reported by the directors. Accepting it as a sum of money accumulated in the insurance department of the plaintiff, we go as far as we can to define its character. On the case presented to us, no such interest in holders of the policies of life insurance in this sum is shown as to sustain a bill for an account, should such be filed, and the defendants as assessors of property could not determine a title to be in policy holders which the latter could not establish. The claim that the funds are held in trust for the assured must therefore be overruled.

The argument has been advanced for the defendants that if any part of the assets of a corporation is thus held by it in its own right, and if the corporation is exempted from obligation to make report of, and pay a tax upon, this part, then the provision to that effect of the act of June 8, 1891, creates an exemption which is unconstitutional as within the inhibition, " and all other exemptions shall be wholly void."

But if we bear in mind the clause, " owned by them in their own right," does not exclude the idea of the assets in question having entered into the calculation of the value of the capital stock, and also that the act does not contemplate corporation property as independent of corporation capital, but on the contrary by its amendment of the ambiguous clause of the act of June 1, 1889, shows that in the estimation of the legislature there is no property which does not enter into that calculation, excepting property held in trust for others, the objection of unconstitutionality falls. The phrase, " owned by them in their own right," does not work an exemption ; the provision is against the risk of double taxation, and reaches property not held for others.

The court entered a decree in accordance with the prayer of the bill.

*Error assigned* among others was the decree of the court.

*Alex. Simpson, Jr.*, and *Hampton L. Carson*, for appellant.— If the assets aggregating $31,646,779.17 are taxed at their actual value, such taxation will not be violative of the " due-process-of-law " provision of the Constitution of the United

States, or the " uniformity-of-taxation " clause of the constitution of this state, because other corporations pay tax on the market value of their capital stock and not upon their gross assets : Fox's App., 112 Pa. 337 ; Com. v. N. Y., etc., R. R. Co., 188 Pa. 169 ; Com. v. Lake Shore, etc., R. R. Co., 11 Pa. Dist. Rep. 318 ; Cummings v. Merchants' Nat'l. Bank, 101 U. S. 153; New York v. Barker, 179 U. S. 279 (21 Sup. Ct. Repr. 121).

The assets aggregating $31,646,779.17, belonging to the insurance department of the plaintiff are assets which are " owned by them in their own right" within the meaning of section 5 of the Ăct of June 8, 1891, P. L. 229.

Plaintiffs have in their charge two kinds of assets, aside from the assets of trust estates. One set belongs to the shareholders, subject to the corporate debts, and those assets have paid tax to the state in the capital stock tax. In the other set the shareholders have no direct interest, and no part of them can ever go to the shareholders. At plaintiff's instance, they were, by judicial decree, wholly excluded from consideration in determining the value of the capital stock, though under the decision of this court all the assets of the corporation are to be appraised in determining that value. Those assets never have paid a state tax, either directly or in the valuation of the capital stock. They are therefore taxable.

This, then, brings us to the real and indeed the only question raised, viz. : Are such assets liable to pay the four mills tax the same as like assets are in the hands of individuals? Chadwick v. Maginnes, 94 Pa. 117 ; Com. v. Standard Oil Co., 101 Pa. 119 ; Com. v. Lehigh Valley R. R. Co., 129 Pa. 429 ; Com. v. Penna. Coal Co., 3 Dauphin Co. Rep. 142 ; Lackawanna Iron &. Coal Co.'s App., 129 Pa. 346 ; Fidelity Ins., etc., Co. v. Loughlin, 139 Pa. 612 ; Sproul v. Murray, 156 Pa. 293 ; Com. v. Fall Brook Coal Co., 156 Pa. 488 ; Com. v. Provident Life & Trust Co., 3 Dauphin Co. Rep. 130 ; Com. v. Ontario, etc., Ry. Co., 188 Pa. 205 ; Bell's Gap. R. R. Co. v. Penna., 134 U. S. 232 (10 Sup. Ct. Repr. 533); Fox's App., 112 Pa. 337 ; Com. v. N. Y., etc., R. R. Co., 188 Pa. 169 ; Fidelity Ins. etc., Co. v. Loughlin, 139 Pa. 612 ; Appeal of Lackawanna Iron & Coal Co., 129 Pa. 346 ; Com. v. Wm. Mann Co., 150 Pa. 64 ; Com. v. Westinghouse Electric & Mfg. Co., 151 Pa.

265; Young Men's Christian Assn. v. Donohugh, 7 W. N. C. 208; Moore v. Taylor, 147 Pa. 481; Phila. v. Barber, 160 Pa. 123; Mercantile Library Co. v. Phil., 161 Pa. 155.

*M. E. Olmsted* and *Samuel Dickson,* for appellee.—The statute instead of authorizing, expressly forbids the attempted taxation: Fox's App., 112 Pa. 337; Loughlin's App., 19 W. N. C. 517; Trust Co. v. Loughlin , 17 Phila. 123; Com. v. Lehigh Valley R. R. Co., 129 Pa. 429 ; Wilkes-Barre Deposit & Savings Bank v. Wilkes-Barre, 148 Pa. 601.

The securities sought to be taxed are owned by the company in its own right: Graham v. R. R. Co., 102 U. S. 148.

Authority for taxation must be shown in a clear and unambiguous statutory language: Powers v. Barney, 5 Blatch. 202, 203; U. S. v. Wigglesworth, 2 Story, 369–373 ; Cooley on Taxation, 199, 200 ; Sutherland on Stat. Construction, sec. 361, 362 ; Boyd v. Hood, 57 Pa. 98; Partington v. Atty.-Genl., L. R. 4 H. L. Cas. 100.

The $31,646,779.17 of securities do enter into the valuation of the company's capital stock upon which tax is paid : Pullman's Palace Car Co. v. Com., 107 Pa. 156.

The attempted taxation violates constitutional requirements as to uniformity : Com. v. Lake Shore, etc., R. R. Co., 11 Pa. Dist. Repr. 318 ; Pullman Palace Car Co. v. Com., 107 Pa. 156 ; Com., v. N. Y., etc., R. R. Co., 188 Pa. 169 ; Cope's Est., 191 Pa. 1; Portuondo's Est., 191 Pa. 28.

OPINION BY MR. JUSTICE FELL, May 15, 1905 :

In 1900 the Provident Life and Trust Company, the appellee, reported to the auditor general that its capital stock, the par value of which was $1,000,000, was of the actual value of $5,100,000, and it paid thereon the five mills tax imposed by the act of 1891. It reported that as trustee, executor, administrator and guardian it held bonds, mortgages and other securities of the value of $6,455,282. On this it paid the state tax of four mills. It also paid a tax of eight mills on its gross premiums, and other taxes amounting in all to over $150,000. Upon notice from the board of revision of taxes of the city of Philadelphia, it made a return under protest of so-called insurance assets aggregating $31,646,779.17. The question raised

by this appeal is whether these assets are subject to a state tax of four mills.    They are subject to the tax if within the meaning of the act of assembly they are held in trust for others. They are exempt from taxation, except as they are included in the value of the capital stock of the company, if they are owned by it in its own right.

The first section of the Act of June 1, 1889, P. L. 420, in terms includes corporations with natural persons in imposing a tax on money at interest, but by the fourth proviso to the twenty-first section, imposing a tax on capital stock, corporations are relieved from any tax on bonds, mortgages and other securities " belonging to them and constituting any portion of their assets included within the appraised value of their capital stock."    This section of the act of 1889 was amended by the Act of June 8, 1891, P. L. 229, and the words of the proviso above quoted were omitted from the later act and the exemption was extended to mortgages, bonds and other securities held by corporations, "owned by them in their own right." In construing the act of 1889, it was held that the intent of the proviso was to prevent double taxation and that the tax imposed by the twenty-first section was not cumulative but in substitution for that imposed by the first section : Fidelity Ins., etc., Co. v. Loughlin, 139 Pa. 612.    The same construction would apply to the act of 1891.

This is briefly the legislation on the subject.    The facts to which it is applied are these : The Provident Life and Trust Company is a corporation conducting the business of a life insurance and trust company.    In the management of its business all receipts are mingled in a common fund.    In order to keep track of its different branches, the receipts from insurance are credited to the insurance branch, and the expenses, death losses and payments on endowment policies are charged to this branch.    The surplus with accumulations of interest is held as a reserve fund to meet the payment of policies as they mature and to make certain the fulfillment of the contracts of insurance.

The contention that the insurance assets are not owned by the corporation is based on the Act of February 18, 1869, P. L. 194, amending the act under which the company was incorporated which provides : " That all the net profits to be derived

from the business of life insurance after deducting the expenses of the company, shall be divided pro rata among the holders of the policies of such life insurance, equitably and ratably, as the directors of said company shall and may, from time to time, ascertain, determine and report the same for division." These assets do not represent the net profits of the insurance branch. They are a part of the gross assets of the company, subject to its insurance liabilities, which amount to over $43,000,000. The clear finding on this subject is : "There is no provision of law that plaintiff's assets or any part of them derived from its business of insurance shall be set apart for the benefit of policy holders, and they.are not so set apart, but, as matter of bookkeeping, plaintiff keeps a separate and distinct account of the assets pertaining to that side of its business. Its contract with its policy holders contains no provision giving them a claim upon any particular assets, but is the ordinary standard form of insurance policy. When insurance losses occur, they are paid out of the general fund of the company, and subsequently as a matter of bookkeeping charged to the insurance side of its business. The $31,646,779.17 of securities reported by plaintiff under protest was owned by it in its own right, and not as trustee, executor, administrator, guardian or any other fiduciary capacity."

These securities constitute a fund owned by the company in its own right to meet contingent liabilities. No particular assets represent the net profits, which in 1900 amounted to $6,279,520, to which the policy holders will become entitled when the directors. of the company ascertain and report them for division. Until they are reported for division, the policy holders are entitled to nothing, and then not to securities in kind but to money. This fund is under the absolute control of the trust company and was created to meet future indebtedness. The management of the company does not differ in this regard from the management of other financial institutions that create an adequate reserve against certain liabilities. It is only by regarding the company as a holding company and its branches as distinct entities for whose benefit investments are made and securities held that any conception of a distinct trust relation arises. If so regarded it is a trustee as well for its depositors of all securities purchased with funds received

by its banking department, and these are liable to taxation. The act of 1891 contemplates no such shadowy trust relation as this.

A further discussion of the subject would be a useless repetition of the reasons so clearly stated in the able opinion of the learned judge of the common pleas.

The decree is affirmed at the cost of the appellant.


MR. JUSTICE POTTER, dissenting :

It is admitted in the opinion filed on behalf of the majority of the court in this case, that the invested funds aggregating $31,646,779, are properly to be taxed, if they are held in trust for others. It can only fairly escape the same taxation as other moneys at interest pay, if it is owned by the trust company in its own right. It appears from the record that in 1898, when the commonwealth undertook to do the very thing which the trust company now says ought to be done, that is, tax the insurance assets as the property of the company held by it in its own right, the company strenuously resisted. It then set forth, referring to its charter, that it was " authorized by said charter to conduct, and it does conduct, in pursuance of said charter authority, two separate and distinct branches of business, viz. : the business ordinarily incident to a trust company and the business of a life insurance company. . . .

" Its capital stock, surplus fund, and undivided profits above mentioned are not used with reference to, or in connection with, or as part of, its life insurance business in any way whatsoever, but are entirely separate and distinct therefrom, and its stockholders, as such stockholders, have no interest in the life insurance business, which is conducted as other life insurance companies are conducted, not for the benefit of stockholders but for the benefit of the insured ; it being expressly provided by the Act of February 18, 1869, P. L. 194, supplementary to the original act incorporating the company, that ' the net profits to be derived from the business of life insurance, after deducting the expenses of the company, shall be divided pro rata among the holders of the policies of such life insurance, equitably and ratably, as the directors of said company shall and may, from time to time, ascertain, determine, and report the same for division.' Such divisions are from time to time made

to the holders of policies, but no division of profits arising from the insurance business are, or ever have been divided among the stockholders as such. The assets of the insurance part of the company's business are kept in an entirely separate and distinct fund, and are not covered by the capital stock of the company, and have no relation thereto, no more than if the insurance business were conducted by an entirely separate and distinct corporation."

The contention of the company in this respect was well founded and was sustained by the Dauphin county court. But the present attitude of the company is entirely inconsistent with the view for which it so stoutly and successfully contended at that time. The result is that under the conclusion reached by the trial judge in this case, and affirmed by the majority of this court, this very large invested fund, composed of the insurance assets of the company, escapes taxation altogether. Under any other circumstances than those in which it now seeks to avoid taxation, the company would no doubt reject with vigor, any suggestion that it did not hold the insurance assets in trust for the policy holders. It would be most insistent that in common with all other sound and reliable insurance companies, its attitude to its policy holders is that of a pure trusteeship. The policy holders contribute the capital, which is invested on their account to equalize the mortality risks; and after paying the cost of administration, the whole amount, surplus as well as legal reserve, is morally and equitably the property of the policy holders. Not a dollar of it belongs to, or can in any way lawfully be distributed among the stockholders of the trust company. They have no more right to it than to any fund which the company may hold as guardian, administrator or receiver.

There can be no question but that the fund now under consideration is made up of the proceeds of premiums paid by the policy holders to cover the mortality risks for the whole period of their policies. It is the amount reserved to meet claims accruing from the insurance in force. It belongs to the holders of policies who are entitled at their maturity to the face value and in addition to a pro rata share in the accumulated profits.

How then is it possible to hold that this is not a fund held by the company in trust for them?

The company holds the legal title to the fund, but to suggest that it holds the fund in its own right, for the benefit of its stockholders, is startling in the extreme.   The only benefit which can accrue to the stockholders of the trust company, is in the handling of the fund as a deposit in course of investment, and from the incidental advantages which accrue from the control of large sums of money.   In addition to this, under its charter privilege, all expenses of conducting the trust company are chargeable to the insurance department of the business.   To my mind, it is perfectly clear that the fund in question is made up of trust assets, and as such, they are taxable as in the case of individuals.

I would therefore reverse the decree of the court below, and dismiss the bill.

DEAN, J., concurs in this dissent.