## Commonwealth v. Keystone State B. & L. Assn.

*Charles J. Margiotti*, Attorney General, and *Manuel Kraus*, Deputy Attorney General, for Commonwealth.

*Philip S. Moyer* and *M. Clyde Schaeffer*, for defendant.

WICKERSHAM, J., April 19, 1937.—It was agreed that trial by jury be dispensed with and that this case be submitted to the decision of the court to be heard and determined under the provisions of the act entitled "An act to provide for the submission of civil cases to the decision of the court, and to dispense with trial by jury", approved April 22, 1874, P. L. 109.

342

The facts in this case have been stipulated by counsel, and, so far as they are necessary for discussion of this case, are as follows:

1. The Keystone State Building & Loan Association is a corporation of the Commonwealth of Pennsylvania, incorporated as a building and loan association, with its principal office and place of business in the City of Pittsburgh.

2. Appellant duly filed with the Department of Revenue its report in compliance with section 1 of the Act of June 22, 1897, P. L. 178, and section 717 of The Fiscal Code of April 9, 1929, P. L. 343, without admitting thereby any legal liability so to file said report, or that its secretary or treasurer must deduct a tax on all full-paid, prepaid, and fully matured or partly matured stock upon which annual, semi-annual, quarterly, or monthly cash dividends or interest were paid during the year ending March 31, 1935, and pay the same to the Commonwealth.

3. Said report shows that the amount of dividends (termed interest in the printed form) paid during said year was $57,165.99, and that the rate was 4½ percent.

4. The Department of Revenue settled an account for tax on full-paid, prepaid, and fully matured stock amounting to $1,270,355, as of December 31, 1936, by capitalizing the dividends paid by appellant during the year 1935, at the appellant's dividend rate. To this amount the taxing officers applied a rate of tax of 5 mills, resulting in a tax of $6,351.78, which amount was paid to the Department of Revenue under protest, in pursuance of the provisions of section 1108 of The Fiscal Code, supra, and its amendatory Act of July 15, 1935, P. L. 1029.

5. Appellant filed a petition for resettlement of said tax with the Department of Revenue, and a petition with the Board of Finance and Revenue for review of the action of the Department of Revenue and the Department of the Auditor General, the prayers of which petitions were refused.

6. On December 28, 1936, appellant lodged with the Department of Justice, as required by law, its appeal from said order or decision of the Board of Finance and Revenue and from said settlement of account.

7. As of December 31, 1935, 937 shares of full-paid stock of appellant (par value $100) were owned by persons or corporations resident or domiciled outside of this Commonwealth; 220 shares of its full-paid stock were owned by religious, charitable, educational, or benevolent corporations, institutions and associations of this Commonwealth; 80 shares of full-paid stock were owned by domestic corporations which were liable to or relieved from the payment of capital stock tax to the Commonwealth; 750 shares of full-paid stock were owned by State banks which paid a tax on their shares to the Commonwealth; and 8 shares of full-paid stock were owned by National banks. No deduction or allowance of any kind was made by the taxing officers in the aforesaid tax settlement for the ownership of any of the shares of stock just referred to.

### Questions involved

1. Does the Act of 1897, supra, as construed and applied by the taxing officers in this case, violate section 8 of article I, and the fourteenth amendment of the Constitution of the United States, and section 6 of article III and section 1 of article IX of the Constitution of Pennsylvania?

2. Is the settlement made against appellant under the said Act of 1897 as a tax upon its full-paid, prepaid, and fully matured stock, for the calendar year 1935 illegal, in that it has included the value of 937 shares of full-paid stock of appellant owned by persons and corporations resident or domiciled outside of this Commonwealth?

3. Is the settlement illegal in that it includes the value of 220 shares of its full-paid stock owned by religious, charitable, educational, or benevolent corporations, institutions, and associations of this Commonwealth?

4. Is the settlement illegal in that it includes the value of 80 shares of full-paid stock owned by domestic corporations which were liable to or relieved from the payment of capital stock tax to the Commonwealth?

5. Is the settlement illegal in that it includes the value of 750 shares of full-paid stock owned by State banks which paid a tax on their shares to the Commonwealth?

6. Is the settlement illegal in that it includes the value of eight shares of full-paid stock owned by National banks?

## Discussion

The Commonwealth contends that the tax as settled by its taxing officers is authorized by the Act of 1897, supra, entitled: "An act taxing certain stocks of building and loan associations for State purposes", which provides, inter alia:

"That upon all full paid, prepaid, and fully matured, or partly matured stock in any building and loan association incorporated under the laws of this State . . . and upon which annual, semi-annual, quarterly or monthly cash dividends or interest shall be paid, there shall be paid a State tax equal to that required to be paid upon money at interest by the general tax laws of this State; and such tax shall be deducted from the cash dividend or interest so provided for by the secretary or treasurer of such corporation, and be paid to the State Treasurer. And every such domestic corporation shall annually make return to the Auditor General, at the time other returns for taxation are required to be made, of the amount of its stock outstanding entitled to receive cash dividends or interest. . . . Provided however, That nothing in this act shall be taken to require the payment of any tax upon any unmatured stock of building and loan associations upon which periodical payments are required to be made, or upon any such stock after it has matured and is in process of payment."

We think this act is complete and explicit in purpose, scope, and intent, and imposed a liability for tax on ap-

pellant; and that the rate to be applied is specific by its language when that rate is "equal to that required to be paid upon money at interest by the general tax laws of this State."

Under the rules of statutory construction, the term "money at interest" in the Act of 1897 is to be read in the light of existing legislation as subsequently supplemented and amended.

Reviewing the history of taxation of money at interest in Pennsylvania, it appears that the original act taxing personal property was the Act of March 25, 1831, P. L. 206, entitled:

"An act assessing a tax on personal property, to be collected with the county rates and levies, for the use of the commonwealth."

This act imposed a tax on "all ground rents, moneys at interest, and all debts due from solvent debtors, whether by promissory note, except bank notes . . . and on which any dividend or profit is received by the holder thereof . . . shall be subject to a yearly tax of one mill upon every dollar of the value thereof".

The Act of June 11, 1840, P. L. 612, entitled "An act to create additional revenue to be applied towards the payment of interest and the extinguishment of the debts of the commonwealth", imposed an annual tax of one-half mill on "all personal estate and property . . . that is to say: on all mortgages, moneys at interest, debts due from solvent debtors, whether by promissory note".

The Act of April 29, 1844, P. L. 486, in section 32, imposed a tax on "all personal estate, to wit: horses, mares . . . also all mortgages, money owing by solvent debtors, whether by promissory note, penal or single bill, bond or judgment; also all articles of agreement and accounts bearing interest, owned or possessed by any person or persons whatsoever, except notes or bills for work and labor done, and bank notes".

The purpose of the legislation to which we have referred was to levy and collect a tax on personal property and

money at interest for State purposes, and therefore the Act of 1897, under which this levy was made, is not inconsistent with prior legislation, and these enactments were in force at the time of the passage of said act.

The Act of June 1, 1889, P. L. 420, as amended by the Act of June 8, 1891, P. L. 229, is similar in form and imposes a tax as follows:

"All mortgages, all moneys owing by solvent debtors, whether by promissory note, or penal or single bill, bond or judgment; all articles of agreement and accounts bearing interest".

The Act of June 17, 1913, P. L. 507, exempted building and loan associations from its provisions.

The State Personal Property Tax Act of June 22, 1935, P. L. 414, does not apply to building and loan associations: See section 3, page 416. If a tax is imposed, therefore, it must be under the first section of the Act of 1889, supra, which in its terms includes corporations with natural persons in imposing a tax on money at interest: Provident Life & Trust Co. v. Durham, 212 Pa. 68, 79.

The Act of 1897 imposes a tax liability on all full-paid, prepaid, and fully matured or partly matured stock in every building and loan association incorporated under the laws of this State, and it provides how such corporation shall make its return. The base of the tax is set and fixed by this act, the rate only to be supplied by the general tax laws of this State imposed upon money at interest. Since 1897, building and loan associations in this Commonwealth have been taxed in pursuance to this act. The rate of tax has increased from time to time because the rate in the general tax laws on personal property and money at interest has increased.

1. Is the Act of June 22, 1897, P. L. 178, constitutional?

The question raised is whether the Act of June 22, 1897, P. L. 178, offends against section 6 of article III of the Constitution of Pennsylvania, which provides as follows:

"No law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only, but so much thereof as is revived, amended, extended or conferred shall be reënacted and published at length."

We think the above section of the Constitution applied, first, to the revival of laws, and second, to the amendment of laws. The Act of 1897 does not offend the above constitutional provision because it is not a revival or amendment, nor are its provisions extended or conferred by reference to its title: See Searight's Estate, 163 Pa. 210, in which Mr. Justice Mitchell said at p. 216:

"The second proposition may be disposed of first. The Act of 1887 does not undertake to amend the Act of 1834, and therefore did not need to repeat its terms. The constitutional provision has reference to express amendments only. . . . The constitution does not make the obviously impracticable requirement that every act shall recite all other acts that its operation may incidentally affect, either by way of repeal, modification, extension or supply." See also Davis v. Moore, 50 Pa. Superior Ct. 494.

The Act of April 12, 1905, P. L. 142, provided for the election and appointment of road supervisors. Section 14 of that act invested road supervisors with all the duties imposed by existing laws on supervisors of roads, bridges, and highways. The Superior Court of Pennsylvania in Wysox Township Road, 42 Pa. Superior Ct. 258, 262, held that this law did not violate section 6 of article III of the Constitution. The opinion of the Superior Court is interesting but need not be repeated here. See also Ruler v. York County et al., 290 Pa. 427, 435, which is to the same effect.

It is sufficient to say that the said Act of 1897 is not and does not purport to be, either in its title or context, an amendment of any statute, nor does it purport to revive or have the effect of reviving any statute. This act is not

an amendatory act nor an extending act, but is a new statute, complete in itself, complete in its title and provisions, and section 6 of article III of the Constitution has no application thereto.

We think there is no ground for appellant's argument that, because the general laws of this State must be referred to for the rate, this act offends section 6 of article III of the Constitution.

In the case of In re Greenfield Avenue, 191 Pa. 290, the court had under consideration the Act of May 22, 1895, P. L. 105, which authorized street improvements by cities at the expense of property owners specially benefitted, and provided that:

"In exercising the power aforesaid, all proceedings for the ascertaining of damages and the assessment of benefits incident thereto shall be as now provided by law in reference to payment of costs, damages and expenses of public improvements within municipal corporations".

It was said that this act did not violate section 6 of article III of the Constitution. The opinion of the Supreme Court in reaching this conclusion is quite lengthy, from which we quote, briefly, at page 296:

"The constitution does not make the obviously impracticable requirement that every act shall recite all other acts that its operation may incidentally affect, either by way of repeal, modification, extension or supply." See also James Smith Woolen Machinery Co. v. Browne, 206 Pa. 543, 548.

It is a well-established rule of statutory construction that where the reference in an adopting statute is to the rule generally which governs the particular subject, the reference means the law at the time the exigency arises. In Guenthoer's Estate, 235 Pa. 67, 73, the court said:

". . . it is equally well established as a rule of statutory construction that where the reference in an adopting statute is to the law generally which governs the particular subject, and not to any specific act or part thereof

designated in the adopting act, the reference means the law at the time the exigency arises as to which the law is to be applied. We have frequently recognized this distinction and applied the rule that where the reference in an adopting statute is to the law generally upon any subject, the adopting statute means the law in force on the subject *at the time it is invoked*". (Italics ours.)

In consideration of these well-established authorities, and the reference in the Act of 1897 to the general laws of this State rather than to the tax under a particular statute, there can be no doubt that the legislature, which is presumed to enact statutes in the light of such rules, referred to the rate of tax upon "money at interest" at the particular time the tax is assessed and payable.

It is always presumed that the act questioned is constitutional, and the parties alleging its invalidity have the burden of showing such invalidity. In order to do this they must show a clear, unjustifiable and plain violation of the Constitution so as to leave no doubt: Sharpless et al. v. The Mayor of Phila., etc., 21 Pa. 147; Speer v. The School Directors, etc., 50 Pa. 150; The Pennsylvania R. R. Co. v. Riblet, 66 Pa. 164.

It is further contended by appellant that if the act is construed as imposing a duty upon the secretary or treasurer of a building and loan association to deduct from the cash dividends or interest paid on its stock the tax here involved, it would violate the equal protection and due process clauses of the fourteenth amendment of the Constitution of the United States, and section 1 of article IX of the Constitution of Pennsylvania, because certain types of money at interest were exempted from taxation in Pennsylvania. This argument of appellant is a denial of the power of the legislature to classify property of any nature for purposes of taxation, and cannot be sustained: Commonwealth v. Delaware Division Canal Co., 123 Pa. 594.

In Seabolt et al. v. The Commissioners of Northumberland County, 187 Pa. 318, 323, the court said:

"Legislation for a class distinguished from a general subject is not special but general, and classification is a legislative question, subject to judicial revision only so far as to see that it is founded on real distinctions in the subjects classified, and not on artificial or irrelevant ones used for the purpose of evading the constitutional prohibition. If the distinctions are genuine the courts cannot declare the classification void, though they may not consider it to be on a sound basis. The test is, not wisdom, but good faith in the classification". See also the very recent case of Commonwealth v. Girard Life Ins. Co., 305 Pa. 558, in which insurance companies were classified into stock companies and mutual companies, and where the same constitutional questions were raised. The court upheld the classification in a very well written opinion from which it is not necessary to quote.

The Act of April 21, 1933, P. L. 54, amending the Act of 1913, supra, exempted from taxation interest-bearing deposits in banks. In Donnelly's Estate, 113 Pa. Superior Ct. 274, the court sustained the classification, holding:

"Interest-bearing deposits which help maintain a sound banking system for the convenience and protection of the thrifty and for the stimulation and extension of credits are distinguishable from all other kinds of interest-bearing accounts which benefit their owners only". See opinion of the judges of the Orphans' Court of Allegheny County, page 278, affirmed by the Superior Court in a per curiam opinion.

Referring now to the objection that the exemptions violate the United States Constitution, we think this matter is set at rest by the Supreme Court in Knisely v. Cotterel, 196 Pa. 614.

An examination of the various classes of personal property or investments, the exemption of which is objected to as discriminatory against building and loan shares, proves that the classification thereof was founded upon a substantial and reasonable basis. The act of 1933, supra, exempted accounts in banks, savings institutions,

and trust companies from the personal property tax. This classification was justified and the act was held constitutional in Donnelly's Estate, supra.

2. Is the settlement made by the taxing officers illegal in that it has included the value of 937 shares of full-paid stock of appellant owned by persons and corporations resident or domiciled outside of this Commonwealth?

Appellant objects to the taxation of certain of its shares in the hands of nonresidents of Pennsylvania. We think this objection is not sustained by any position of the Pennsylvania courts. The Supreme Court of Pennsylvania and this court have upheld the right of the Commonwealth to tax shares owned by nonresidents of Pennsylvania: Commonwealth v. Schuylkill Trust Co., 315 Pa. 429. While it is true this case was reversed by the Supreme Court of the United States (see 296 U. S. 113) the question here involved was not raised and decided in that court: See p. 123, third paragraph.

3. Is the settlement illegal in that it includes the value of 220 shares of its full-paid stock owned by religious, charitable, educational, or benevolent corporations, institutions and associations of this Commonwealth?

We think the settlement of the taxing officers which proposes to tax the value of 220 shares of full-paid stock owned by religious, charitable, educational, or benevolent corporations, institutions and associations of this Commonwealth is illegal.

"The public charities of the state have in times past, even from the time of Penn, been justly regarded as one of its chief glories. They have conferred upon the state benefits infinitely greater in value than any benefits of subsidies which, from time to time, it has conferred upon them. They have always been considered by even the most calculating of economists as benefactors of the state. Are we to suppose that, by such language as that which is used in the first section of this act [Act of June 1, 1889, supra] the legislature intended to tax every

purely public charity, and every religious and philanthropic society in the state, every hospital and every refuge and home for the afflicted and the suffering, and yet exempt from the tax all 'building and loan associations' as the same section does? Yet this very exception, it was argued by the defendants, went to show that the plaintiffs were included in the act, upon the principle of expressio unius est exclusio alterius. To us it appears to be one of the strongest indications in the whole act, showing that the legislature did not suppose or intend that purely public charities were within the words or the meaning of the act; that they did not intend to declare that building and loan associations were of more importance to the welfare of the state, and more entitled to its favor and fostering care than its hospitals, its homes for the sick and suffering, and all the societies for the promotion of religion and the dispensation of charity, which are scattered over all its broad domain, and that when they taxed personal estate held by persons or corporations in trust for the use, benefit and advantage of other persons, they did not intend to levy a tax upon all the charities and religious societies within the state. The exception of building and loan associations shows what was in the mind of the legislature": General Assembly v. Simon Gratz et al., 139 Pa. 497, 506. See also Buhl's Estate, 300 Pa. 29; Mattern v. Canevin, 213 Pa. 588; Act of July 17, 1919, P. L. 1021, and its amendments.

4. Is the settlement illegal in that it includes the value of 80 shares of full-paid stock owned by domestic corporations which were liable to or relieved from the payment of capital stock tax to the Commonwealth?

Appellant objects to the taxation of 80 shares of its stock owned by Pennsylvania corporations liable to or relieved from the payment of capital stock tax in Pennsylvania. We think this objection is sound. Having paid the tax on their capital stock to the Commonwealth, to attempt now to impose this further burden on domestic

corporations would result in double taxation, and would, we think, violate section 2 of the Act of April 25, 1929, P. L. 657, which provides as follows:

"That corporations, limited partnerships, and joint-stock associations, liable to tax on capital stock under this section, shall not be required to pay any further tax on the mortgages, bonds, and other securities owned by them and in which the whole body of stockholders or members, as such, have the entire equitable interest in remainder; but corporations, limited partnerships, and joint-stock associations, owning or holding such securities as trustees, executors, administrators, guardians, or in any other manner than for the whole body of stockholders or members thereof as sole equitable owners in remainder, shall return and pay the tax imposed by this act upon all securities so owned or held by them, as in the case of individuals".

5. Is the settlement illegal in that it includes the value of 750 shares of full-paid stock owned by State banks which paid a tax on their shares to the Commonwealth?

We think these 750 shares are not taxable provided this asset is carried by the banks in any such way as to show that they have paid the tax, and the burden is on the banks to show that, and therefore the burden is on this appellant to show that these State banks have paid the tax, and if that burden is not met they are taxable. However the Commonwealth has agreed to the stipulation of facts, and in fact no. 7 they have agreed that the said 750 shares of full-paid stock were owned by State banks which paid a tax on their shares to the Commonwealth. We reach the conclusion, therefore, that these shares are not taxable. For many years in Pennsylvania, since the passage of the Act of 1897, State banks which have paid the tax on shares to the Commonwealth, as therein provided, have been exempted from all liability for personal property tax and corporate loans tax on all personal property owned by them in their own right: Commonwealth v. Clairton Steel Co., 222 Pa. 293. Since the passage of the Act of

April 25, 1929, P. L. 677, State banks have been treated by the taxing officers of the Commonwealth exactly like all other Pennsylvania corporations and their assets exempted from all other State tax.

6. Is the settlement illegal in that it includes the value of eight shares of full-paid stock owned by National banks?

It is claimed that the shares of defendant held by National banks are not taxable. We cannot sustain this objection; we think they are taxable: Baltimore National Bank v. State Tax Commission of Maryland, 297 U. S. 209, 215.

We are of opinion that there is no legal basis for the 5-mill rate of tax imposed by the taxing officers of the Commonwealth in the settlement against appellant on full-paid and fully-matured stock which it had issued in 1935 and upon which it had paid dividends during 1935, because neither the Act of June 22, 1935, P. L. 414, nor any act of assembly imposed an increased rate of tax for State purposes for the year 1935; and it is now conceded by the Attorney General that the 1-mill additional tax imposed by the Act of 1935 does not apply to the instant case.

We are of opinion that the assessment of the tax of 1 mill in addition to the regular tax of 4 mills cannot be sustained, and that judgment must be entered in favor of the Commonwealth and against appellant at the rate of 4 mills, less the exemptions we have herein allowed.

### Conclusions of law

1. The Act of June 22, 1897, P. L. 178, imposing a tax on money at interest, is not unconstitutional and was in effect during the tax year of 1935.

2. The language of the Act of June 1, 1889, P. L. 420, was substantially reënacted in the amending Act of June 8, 1891, P. L. 229, sec. 1, and was in force at the time of the passage of the Act of 1897 which imposed a tax upon building and loan associations; and as reënacted in the

Act of June 17, 1913, P. L. 507, and the State Personal Property Tax Act of June 22, 1935, P. L. 414, does in effect impose a tax on money at interest.

3. The Act of 1897 as construed and applied by the taxing officers does not violate section 6 of article III or section 1 of article IX of the Constitution of Pennsylvania; nor does it violate section 8 of article I or the fourteenth amendment of the Constitution of the United States.

4. The said Act of 1897 is not illegal and unconstitutional as a tax on shares of defendant because it taxes certain shares owned by nonresidents of the State, and the 930 shares of full-paid stock of defendant owned by persons or corporations resident or domiciled outside of this Commonwealth are subject to the payment of this tax.

5. The 220 shares of full-paid stock owned by religious, charitable, educational, or benevolent corporations, institutions, and associations of this Commonwealth are not subject to tax under the Act of June 1, 1889, P. L. 420.

6. The 80 shares of full-paid stock owned by domestic corporations which were liable to or relieved from capital stock tax to the Commonwealth are not subject to the tax.

7. The 750 shares of full-paid stock owned by State banks which paid a tax on their shares to the Commonwealth are not subject to the tax imposed in this case.

8. The eight shares of full-paid stock owned by National banks are subject to the tax imposed in the instant case.

9. No tax is imposed by the Act of 1935, for the calendar year 1935, said act providing only for a tax for the years 1936 and 1937.

10. Said Act of 1935 does not apply to building and loan associations or to savings institutions having no capital stock.

11. There is no legal basis for the 5-mill rate of tax imposed in the instant case, and the 1-mill additional tax imposed by the Act of 1935 does not apply to the instant case.

*Judgment*

Amount of tax settled at 5 mills,
  paid by appellant under protest. . $6,351.78
Tax at rate of 4 mills allowed in
  this opinion................... 5,081.42
                                 ————    $1,270.36

Exemptions allowed
220 shares (par value $100) owned
  by charitable, etc., institutions, at
  4 mills........................      88.00
80 shares owned by domestic cor-
  porations, at 4 mills...........      32.00
750 shares owned by State banks,
  at 4 mills.....................   300.00
                                   ————     420.00

     Total refund ...........             $1,690.36

And now, April 19, 1937, judgment is directed to be entered in favor of appellant, Keystone State Building & Loan Association, and against the Commonwealth of Pennsylvania, for the refund above set forth, amounting to $1,690.36, unless exceptions be filed within the time allowed by law.