# Provident Life & Trust Company *v.* McCaughn, Appellant.

*Constitutional law—Title of act—Act of June 7, 1911, P. L. 673 —Supplement to former act.*

1. When an act of assembly is a supplement to a former act, if the subject of the original act is sufficiently expressed in its title, and the provisions of the supplement are germane to the subject of the original, the general rule is that the subject of the supplement is covered by a title which contains a specific reference to the original by its title, giving the date of its approval and declaring the act to be a supplement thereto.

2. The title to the Act of June 7, 1911, P. L. 673, reading, "An Act being a further supplement to an act, entitled, 'An act to provide revenue by taxation'; approved the 7th day of June, A. D. 1879, amending the amendment of the supplement thereto which became a law on the first day of June, A. D. 1889, which amendment herein amended was approved the 8th day of June, A. D. 1891, relating to the tax on capital stock, approved the 8th day of June, 1893, relating to taxing bonds, mortgages, and other securities," is sufficien+¹⁻ comprehensive to cover the provisions of the act.

*Taxation—Constitutional law—Corporations—Joint stock companies—Limited partnerships—Capital stock—Tax.on securities— Insurance fund of trust company—Special legislation—Right of policy holder to vote—Double taxation—Act of June 7, 1911, P. L. 673.*

3. The provision of the Act of June 7, 1911, P. L. 673, that securities owned by corporations, limited partnerships or joint stock associations, which are held in any other manner than for "the whole body of stockholders or members, as such" shall be taxed as though they belong to individuals, does not create an unlawful classification, although it may cast a heavy burden upon those who fall within its scope as compared with others not in the same class. The classification cannot be set aside on the ground that it affects one corporation alone, where there is no finding upon the

record or evidence to justify the conclusion that it is the only person to which the act can apply.

4. In the Act of June 7, 1911, P. L. 673, providing "that corporations, limited partnerships or joint stock associations liable to tax on capital stock, shall not be required to pay any further tax on the mortgages, bonds and other securities owned by them and in which the whole body of stockholders or members as such have the entire equitable interest in remainder; but corporations, limited partnerships and joint stock associations owning or holding such securities, as trustees, executors, administrators, guardians, or in any other manner than for the whole body of stockholders or members thereof as sole equitable owners in remainder, shall return and pay the tax imposed by this act upon all securities so owned or held by them, as in the case of individuals," the word "stockholders" applies to corporations, and the word "members" to partnerships or joint stock associations. "Equitable interest in remainder" does not refer to a strict equitable title, but means the right to have a division according to natural right and justice. The word "remainder" is meant to signify the part remaining after all prior lawful obligations are satisfied.

5. The meaning of the Act of 1911 is that every concern which falls within its scope must pay a direct tax upon all securities owned by it which do not belong to capital; that is, which are not a part of its capital to such extent and in such a sense that its stockholders, or members who stand toward it in a relation like stockholders, are the sole owners of a right to an equitable distribution thereof, i. e., of so much of the fund which embraces the securities as may remain after all expenses and debts properly chargeable thereto have been satisfied.

6. Where a corporation was authorized by the act incorporating it, to carry on the business of life insurance and that of a trust company, the act contemplating that the life insurance business be conducted as separate and apart from its other business, and where the stockholders as such derive no profit from the insurance business, but the net profits from the insurance business are held for and to be divided among the policy holders only, the insurance securities are held for the policy holders as the equitable owners in remainder, and not "for the whole body of stockholders or members, as such," and are therefore taxable under the Act of June 7, 1911, P. L. 673.

7. In such case the fact that each policy holder, who has paid a certain amount in premiums, is entitled to one vote at the election for directors of the corporation, is immaterial.

8. In such case, where the securities have never been directly taxed, the fact that the State authorities gave the possession of the

securities some consideration as an element in determining the value of the capital stock, does not amount to double taxation. Double taxation within proper limitations is not beyond the power of the legislature to impose.

Argued March 23, 1914.  Appeal, No. 101, Jan. T., 1914, by defendant, from judgment of C. P. No. 2, Philadelphia Co., Dec. T., 1911, No. 1227, in equity, granting injunction in case of Provident Life and Trust Company v. Blakely D. McCaughn and H. Gilbert Cassidy, Assessors, and Simon Gratz, D. Newlin Fell, Jr., and John Wesley Durham, Members of the Board of Revision of Taxes of the City and County of Philadelphia.  Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ.  Reversed.

Bill in equity for injunction restraining collection of tax.  Before WILTBANK, J.

The court granted the injunction.  Defendants appealed.

*Error assigned,* among others, was the decree of the court.

*John C. Bell,* Attorney General, and *William M. Hargest,* Second Deputy Attorney General, with them *Michael J. Ryan,* City Solicitor, for appellants.—The Act of June 7, 1911, P. L. 673, creates a valid classification for taxation: Com. v. Trust Company, 227 Pa. 163; Com. v. Canal Company, 123 Pa. 594; Germania Life Insurance Company v. Com., 85 Pa. 513; Pittsburgh v. Coyle, 165 Pa. 61.  The plaintiff is within the class created by the act.

Corporations not in the class created by the act cannot be used to determine the question of uniformity.  All that is required is uniformity within the class: Com. v. Railway Co., 188 Pa. 169.

The act does not violate the Constitution of Pennsylvania as to uniformity, or the Constitution of the United

States as to equal protection of the laws: Lieberman v. Van de Carr, 199 U. S. 552; Barbier v. Connolly, 113 U. S. 27; Connolly v. Union Sewer Pipe Co., 184 U. S. 540; Com. v. Gilligan, 195 Pa. 504; Sugar Notch Borough, 192 Pa. 349; West Chester Gas Company v. Chester County, 30 Pa. 232; Com. v. U. S. Express Co., 157 Pa. 579.

The plaintiff's assets sought to be taxed were not included in the capital stock tax imposed upon it: Com. v. Provident Life & Trust Co., 12 Dauphin County 104.

The title of the act is good: Provident Life & Trust Co. v. Hammond, 230 Pa. 407; Washington Borough v. McGeorge, 146 Pa. 248.

*John G. Johnson,* with him *Abraham M. Beitler* and *Samuel Dickson,* for appellee.—The act does not impose a tax on the securities here sought to be charged: Provident Life & Trust Co. v. Durham, 212 Pa. 68; Com. v. Provident Life & Trust Co., 12 Dauphin Co. 104.

The construction of the law urged by the Commonwealth would render it unconstitutional: Ayars' App., 122 Pa. 266; Perkins v. Philadelphia, 156 Pa. 554; Scowden's App., 96 Pa. 422; Fox's App., 112 Pa. 337; Com. v. Lake Shore R. R. Co., 3 Dauphin Co. 172; Banger's App., 109 Pa. 79; Rockhill Iron & Coal Co. v. Fulton County, 204 Pa. 44; Lehigh & Wilkes-Barre Coal Co. v. Luzerne County, 225 Pa. 267.

OPINION BY MR. JUSTICE MOSCHZISKER, May 18, 1914:

This appeal involves the constitutionality of the Act of June 7, 1911, P. L. 673, its proper construction, if valid, and the question of its application to the plaintiff corporation.

The act is entitled, "An act being a further supplement to an act, entitled 'An Act to provide revenue by taxation; approved the 7th day of June, A. D. 1879, amending the amendment of the supplement thereto which became a law on the first day of June, A. D. 1889,

which amendment herein amended was approved the 8th day of June, A. D. 1891, relating to the tax on capital stock, approved the 8th day of June, 1893, relating to taxing bonds, mortgages and other securities.' " The court below held this title "insufficient and confusing"; but the learned chancellor who heard the case seems to have become confused by viewing the Act of 1911 as though its title related only to the statute of 1893, and not to the Act of 1879, which it supplemented. "When an act of assembly is a supplement to a former act, if the subject of the original act is sufficiently expressed in its title, and the provisions of the supplement are germane to the subject of the original, the general rule is that the subject of the supplement is covered by a title which contains a specific reference to the original by its title, giving the date of its approval and declaring it to be a supplement thereto": Provident Life & Trust Co. v. Hammond, 230 Pa. 407, 412. Although the title before us makes reference to the Act of 1893, yet, it plainly states that the present statute is a supplement to the Act of 1879 "to provide revenue by taxation," and that it relates to "taxing bonds, mortgages and other securities." These references, particularly when taken in connection with the one to the Act of 1891 "relating to the tax on capital stock," are ample to put the plaintiff and all others in a like position on notice; and the title is sufficiently comprehensive to cover the provisions here brought into question.

But the appellant contends that the statute creates an unjustifiable classification; further that its application to the plaintiff corporation will result in an unlawful discrimination. Under this act, securities owned by corporations, limited partnerships or joint stock associations, which are held in any other manner than for "the whole body of stockholders or members, as such," are taxed as though they belonged to individuals. We cannot say that this is unlawful classification; although it may cast a heavy burden upon those who fall within its

scope as compared with others not in the same class, yet that result is the work of the law-making power, and so long as no constitutional provision has been violated, the question of its weight is not for us to heed or comment upon. But it may not be out of place to notice that when the Act of 1911 was passed, purely mutual insurance companies were and for some time had been taxed on their gross assets like individuals; and the securities which the defendants here claim the right to tax are assets involved in the doing of a mutual insurance business. Again, the classification cannot be set aside on the ground that it affects the appellant alone; for there is no finding upon the record or evidence to justify the conclusion that the plaintiff company is the only concern to which the act in question can apply. While a fund exactly like the one represented by the securities here sought to be taxed, may not be held by any other company at the present time, nevertheless, the words of the statute are so broad and general that we are unable to say that no other fund exists, or will in reasonable anticipation exist in the future, embracing securities in such a way as to bring them within its scope; in other words, even if it be true that these are the only insurance fund investments to which the act now applies, or is likely to apply in the future, its provisions are sufficiently comprehensive to cover all securities held by concerns within its purview for any purpose whatsoever where the "whole body of stockholders or members, as such," have not the "entire equitable interest in remainder" in such assets. Hence, we cannot condemn the act as special legislation; and so far as the alleged unlawful discrimination is concerned, since the fundamental law merely exacts uniformity of taxation within a class, comparison with other corporations outside the class created by the present statute cannot be considered. Com. v. Delaware Div. Canal Co., 123 Pa. 594, 620, 621, 623.

While we hold the act valid legislation, yet, before discussing the question of its application, we must consider

the proper interpretation of certain material words and phrases which occur therein. The statute first provides that every corporation, joint stock association or limited partnership of which a report is required by law, shall pay a tax upon its capital stock; and this includes the plaintiff company. It then provides, "That for the purposes of this act, interests in limited partnerships or joint stock associations shall be deemed to be capital stock, and taxable accordingly"; after this comes the part upon which the defendants rely to sustain their position, i. e., "That corporations, limited partnerships or joint stock associations, liable to tax on capital stock ......, shall not be required to pay any further tax on the mortgages, bonds and other securities owned by them and in which the whole body of stockholders or members, as such, have the entire equitable interest in remainder; but corporations, limited partnerships and joint stock associations owning or holding such securities as trustees, executors, administrators, guardians, or in any other maner than for the whole body of stockholders or members thereof as sole equitable owners in remainder, shall return and pay the tax imposed by this act upon all securities so owned or held by them, as in the case of individuals"—i. e., a direct tax of four mills on every dollar of value. It seems obvious that the word "stockholders," as used in this act, was meant to apply to corporations, and the word "members," to partnerships or joint stock associations; and we so interpret the statute. The evident intent of the legislature was to compel corporations to pay the direct tax fixed by the act on all securities "owned by them" and held "in any manner" other "than for the whole body of stockholders as equitable owners in remainder"; or in other words, to make corporations pay such a tax on all securities "owned or held by them" in which "the whole body of stockholders" have not "the entire equitable interest in remainder"; and this notwithstanding the payment of a capital stock tax. As well stated by the learned court below, "The

PROVIDENT L. & TR. CO. v. McCAUGHN, Appellant. 377

phrase 'the entire equitable interest in remainder' is not used as technical language applicable to estates in land but as descriptive of a right to the application of a balance found upon an accounting"; and, as admitted by the learned counsel for the appellee, the phrase "equitable ownership......does not refer to a strict equitable title similar to that of cestui que trust." A legal definition of "equitable interest," is, "that which can be sustained or made effective or available in a court of equity" (Anderson's Law Dictionary); and the meaning of this phrase in its ordinary sense, as for instance, when applied to an interest in a fund, is the "right to have it divided according to natural right or natural justice" (Webster's New International Dictionary). The word, "remainder," as used in the statute, no doubt, is meant to signify the part remaining after all other prior lawful obligations are satisfied. The words under consideration are new to the taxing laws of the Commonwealth and, therefore, cases cannot be cited with reference thereto; but when we consider the history of the statutory development of this branch of the law, and the particular phrasing now before us, together with the rule that a court must search for a rational meaning to apply to legislative language, the several interpretations here made seem reasonably to present the sense of the statute. Briefly, we take the act to mean that every concern which falls within its scope must pay a direct tax upon all securities owned by it which do not belong to capital; that is,—which are not a part of its capital to such extent and in such a sense that its stockholders, or members who stand toward it in a relation like stockholders, are the sole owners of a right to an equitable distribution thereto, i. e., of so much of the fund which embraces the securities as may remain after all expenses and debts properly chargeable thereto have been satisfied. But, when the statute is so construed, the question of the propriety of its application to the plaintiff corporation still remains to be considered.

Some years ago, an effort was made to tax the securities in the plaintiff's insurance fund, under the Act of June 8, 1891, P. L. 229, which, in place of the new words employed in the Act of 1911, used the phrase "owned by them in their own right"; and in Provident Life & Trust Co. v. Durham, 212 Pa. 68, we held that this could not be done, stating (80), "These securities constitute a fund owned by the company in its own right to meet contingent (insurance) liabilities......; (p. 79) the Provident Life & Trust Co. is a corporation conducting the business of a life insurance and trust company; ......in order to keep track of its different branches, the receipts from insurance are credited to the insurance branch, and the expenses, death losses, and payments on endowment policies are charged to this branch; the surplus with accumulations of interest is held as a reserve fund to meet the payment of policies as they mature and to make certain the fulfillment of contracts of insurance." Later, in White v. Provident Life & Trust Co., 237 Pa. 375, in discussing the character of this fund and the rights of policyholders therein, we said (p. 380), "The defendant is authorized to carry on not only the business of life insurance, but also that of a trust company......; but its charter contemplates that its life insurance business shall be conducted separate and apart from its other business........ The stockholders in the company as such are to derive no profits from the insurance business. The Act of February 18, 1869, P. L. 194, which is a supplement to the act of incorporation, provides, 'that all the net profits to be derived from the business of life insurance, after deducting the expenses of the company, shall be divided pro rata among the holders of the policies of such life insurance, equitably and rateably, as the directors of said company shall and may, from time to time, ascertain, determine, and report the same for division' (p. 385). Whatever the fund in question may be called......its office must be the ultimate protection of the policyholders...... At maturity the

policyholder is entitled to his pro rata share of the fund which has been retained for his benefit"; and we there held that the plaintiff, a holder of matured policies, was possessed of such an equitable interest in this fund as entitled him to a decree "requiring the defendant corporation to state an account" and "to pay over to him his equitable and rateable proportion thereof." Although we said in the Provident Life & Trust Co. v. Durham, 212 Pa. 68, that those insured by this company are not entitled to "securities in kind but to money," yet, this can make no difference in the application of the Act of 1911, so long as the investments sought to be taxed are held for the policyholders "as equitable owners in remainder," and not for the "whole body of stockholders"; nor can the fact that none of the securities is physically marked actually to designate them as insurance assets, be given controlling effect, particularly, in view of the finding that "the plaintiff keeps a separate account of the assets pertaining to that side of its business." In this connection it is to be observed that in the White Case, supra, we note that the insurance department of the plaintiff company is conducted on a "mutual basis," ......"separate and apart from its other business," and that "the stockholders......as such" can "derive no profit" therefrom; and we there conclude that all moneys from insurance receipts which accumulate after the payment of the cost of doing business and the maintenance of a proper reserve, belong "equitably and rateably" to the policyholders to such an extent that they can call upon a court of equity to enforce their rights in the premises. All of which means that the securities in the insurance fund are held for the policyholders as "equitable owners in remainder"; and therefore, it cannot be said that the plaintiff company possesses them "for the whole body of stockholders or members, as such"; and this is the pinch of the case.

The appellant contends, however, that by the terms of its charter, policyholders are members of the corpora-

tion, and that under the terms of the Act of 1911, supra, securities held for their benefit cannot be taxed. We have already determined that the word "members," as used in this act, applies to limited partnerships and joint stock associations and not to corporations. But conceding that there may be such a thing as a member of a corporation for profit, yet, under the language of the present statute, it is clear that the limiting words "as such" which appear between commas immediately after the phrase "stockholders or members," are intended to restrict or qualify the word "members," so as to give it the meaning of members having an interest practically the same as that of stockholders. Since the term "members" is appropriate to "limited partnerships or joint stock associations" and the statute provides that, for its purposes, interests therein shall be "deemed to be capital stock," it seems obvious that this word has relation to such concerns and is intended in the qualified sense we have suggested. Although the policyholders of the plaintiff company have, in a limited way, through the restricted right to vote for directors, privileges ordinarily enjoyed by members of a corporation, nevertheless, they are not on a plane with stockholders; hence, it cannot be said that the securities in question are held for "the whole body of stockholders or members, as such," and the contention as to the effect of their alleged membership falls. But, in addition, an examination of the relevant acts of assembly will show there is very little foundation for the claim that these policyholders are in any real sense members of the plaintiff corporation. The first section of the Charter Act of March 22, 1865, P. L. 555, confers upon the plaintiff all the rights, etc., given by the 1st, 2d, 3d, 5th, 6th, 7th, 9th, 10th, 11th, 16th and 17th sections of the Insurance Company Incorporation Act of April 2, 1856, P. L. 211; the 2d section provides that its affairs "shall be managed by nine directors, stockholders of said company"; and the 3d, for its captital stock. The re-

maining sections only once refer to policyholders; the 7th providing that "at the election for directors, besides the votes to which stockholders are entitled, each policy-holder......(having paid a certain amount in premiums) shall be entitled to one vote." The charter was amended in 1866, (Act of March 12, P. L. 184), by making provision for the regular annual meeting for stockholders, together with some other matters unnecessary here to mention, and the fourth section of this act provides that "every stockholder......shall be entitled, at each annual election......to vote for one director." Then, again, when we look at the Act of 1856, supra, we find that the stockholders alone constitute the corporation, and that its 7th section provides that such corporation shall be empowered to insure the respective lives of "its members and others." The next place where members are mentioned is in the 11th section, and it provides that if a company organized thereunder is to do an insurance business on the mutual principle "alone, and not in connection with a stock capital," then "and in that case," all persons insuring with the company become members during the period they shall remain so insured; but this does not apply to the plaintiff company, for its charter (Act of 1865, supra, sec. 1), stipulates that it "shall transact its business" on the "mutual principle" combined with a "stock capital." In point of fact, most of the sections of the Act of 1856 which designate policyholders as members are not incorporated in the plaintiff's charter. Under the circumstances, we fail to see any reasonable justification for the claim that the policyholders of this company are members thereof within the meaning of the Act of 1911.

Finally, the appellee contends that to uphold the attempted assessment would subject it to double taxation. The figures involved tend to show that the investments in question have never as yet been directly taxed, but at the same time they indicate that the State authorities gave the fact that these securities were held by the plain-

tiff company some consideration, as an element, in determining the value of its capital stock; and this, to a certain limited extent, they had a right to do (Com. v. Mortgage Trust Co., 227 Pa. 163, 179), for, undoubtedly, the possession of such a large fund in connection with the insurance business of the company would in an indirect way affect the value of its capital stock, just as large trust funds in its trust department would have a similar effect. That the possession of the insurance assets entered into the assessment of capital stock to this extent, seems to be admitted; but nothing appears to show that they were further considered. We have no doubt, had those who assessed the capital stock realized that the plaintiff company would be obliged to meet this additional annual tax, they would have taken into account its probable indirect depreciatory effect, which they might well do; but, although, apparently, this was not done, so far as the evidence before us indicates, no actual double taxation is shown. If it were, however, such taxation, within proper limitations, is not unknown to our law or beyond the power of the legislature to impose (West Chester Gas Co. v. Chester County, 30 Pa. 232; Pittsburgh, F. W. & Chicago Ry. Co. v. Com., 66 Pa. 73; Com. v. U. S. Exp. Co., 157 Pa. 579; Com. v. Westinghouse Airbrake Co., 151 Pa. 276; Com. v. Navigation Co., 162 Pa. 603, 610).

It would serve no useful purpose to review the various cases concerning past efforts to tax the securities in this fund; some of them we have had occasion to refer to in the course of this opinion, but none of them controls here, for they all arose prior to the Act of 1911. We conclude that the act now before us creates a new and valid classification for purposes of taxation, and that the plaintiff company is within the class; further, that the act violates neither the Constitution of Pennsylvania nor that of the United States. We have endeavored to discuss all points essential to a proper determination of this appeal, but do not deem it necessary to pass specifically

upon each of the fifty-one assignments of error; the last of these, which goes to the decree, is sustained, the remaining ones are not in proper form (Prenatt v. Messenger Printing Co., 241 Pa. 267, 270), and they are dismissed.

The decree is reversed and the injunction dissolved; the plaintiff to pay the costs.