# Provident Life & Trust Co. *v.* Klemmer et al., Appellants.

*Statutes—Construction—Intention—Presumption — Implied repeal—Rule expressio unius est exclusio alterius.*

1. In the construction of a statute it is proper to consider the previous state of the law, the circumstances which led to the enactment, and especially the evil which it was designed to correct.

2. To repeal an express enactment by implication requires a strong and clear inconsistency between the laws. A merely affirmative statute will not be held to repeal an express one if by fair and reasonable construction both can stand consistently together.

3. Laws are presumed to be passed with deliberation and with full knowledge of all existing ones on the subject.

4. The legislative intent is the vital force of a statute, and if a subsequent statute, taken strictly and grammatically, is contrariant to a previous statute, yet if, at the same time, the intention of the legislature is apparent that the previous statute shall not be repealed, it remains unaffected by the subsequent one.

5. It is a cardinal rule of construction in ascertaining the legislative intent in the enactment of a statute that where an act repeals a prior act or certain sections thereof all other prior acts or sections thereof must be regarded as still in force under the maxim expressio unius est exclusio alterius.

*Taxation—Corporations—Life insurance companies — Insurance assets—Acts of June 7, 1911, P. L. 673, and June 17, 1913, P. L. 507—Construction—Equity—Injunction—Refusal.*

6. The Act of June 7, 1911, P. L. 673, imposing a tax on the insurance assets of a corporation engaged in the business of life insurance is not repealed by the Act of June 17, 1913, P. L. 507, imposing a tax on personal property for State and county purposes, and a bill in equity to restrain the collection of such tax under the Act of 1911 should be dismissed. The Acts of June 7, 1911, P. L. 673, and June 17, 1913, P. L. 507, are in pari materia.

7. The Act of June 17, 1913, P. L. 507, is a codification or compilation of the former laws relating to personal property tax and its principal purpose was to give the tax to the counties instead of, as theretofore, having it collected as a state tax and part of it paid to the counties.

Argued Jan. 17, 1917. Appeal, No. 205, Jan. T., 1916, by defendants, from decree of C. P. No. 2, Philadelphia Co., June T., 1914, No. 2258, awarding an injunction, in case of Provident Life and Trust Company of Philadelphia v. Joseph H. Klemmer and Albert H. Harris, Assessors; Simon Gratz, D. Newlin Fell, Jr., and John Wesley Durham, Members of the Board of Revision of Taxes for the City and County of Philadelphia, and the City of Philadelphia, and W. Freeland Kendrick, Receiver of Taxes. Before BROWN, C. J., MESTREZAT, POTTER, STEWART and FRAZER, JJ. Reversed.

Bill in equity for an injunction. Before BARRATT, P. J.

The opinion of the Supreme Court states the facts.

The court on final hearing awarded an injunction as prayed for. Defendants appealed.

*Errors assigned* were in dismissing exceptions to various findings of fact and law and the decree of the court.

*Wm. M. Hargest,* with him *Mayne R. Longstreth,* Assistant City Solicitor, and *John P. Connelly,* City Solicitor, for appellants.—The Act of June 7, 1911, P. L. 673, which imposes a tax on plaintiff's securities was not repealed by the Act of June 17, 1913, P. L. 507.

*Abraham M. Beitler,* with him *Henry S. Drinker, Jr., R. Stuart Smith* and *Charles E. Morgan,* for appellee.— Under the Act of June 17, 1913, P. L. 507, the insurance assets of the plaintiff are not liable to taxation; the Act of June 17, 1913, P. L. 507, repealed the Act of June 7, 1911, P. L. 673, the insurance assets of the plaintiff are,

therefore, exempt from taxation, and the decree should
be affirmed.

OPINION BY MR. JUSTICE MESTREZAT, March 12, 1917:

This bill was filed by the Provident Life and Trust
Company of Philadelphia to restrain the assessors, the
board of revision of taxes, and the receiver of taxes of
the City and County of Philadelphia, from levying and
collecting the personal property tax of four mills on the
mortgages, bonds and other securities, known as the
plaintiff company's insurance assets, aggregating $59,-
172,072.01. The plaintiff has paid the tax on its capital
stock, on the securities held by it as trustee, etc., the
eight mills tax upon the gross premiums received in its
life insurance business, taxes upon its real estate in
Pennsylvania, and taxes imposed in the other states
where it has agencies. It denies liability for the four
mills tax on its insurance assets under the tax laws of
this State. The single question in the case, therefore,
is whether the defendants are authorized to levy and col-
lect the personal property tax of four mills on the se-
curities which constitute the so-called insurance assets
of the plaintiff, a corporation liable to a capital stock tax.

In determining the question at issue, which requires
the interpretation of existing legislation imposing the
personal property tax, it will aid materially to advert to
the charter acts of the plaintiff company and a part of
the subsequent legislation conferring authority to tax
corporate assets in this State. In the construction of a
statute, it is proper to consider the previous state of the
law, the circumstances which led to the enactment, and
especially the evil which it was designed to correct:
Black, Interp. Laws, Section 91.

The plaintiff was incorporated and organized under
the Act of March 22, 1865, P. L. 555, which authorized
it to do an insurance and a trust business. The act pro-
vides that its "affairs shall be managed by nine directors,
stockholders of said company," and fixes the amount and

par value of the capital stock. The supplementary Act of February 18, 1869, P. L. 194, provides that the net profits to be derived from the business of life insurance shall be divided pro rata among the policyholders. Since its incorporation, the plaintiff has been conducting the business of an insurance company and a trust company.

The Act of June 7, 1879, P. L. 112, entitled "an act to provide revenue by taxation," was the first general revenue act adopted by the legislature, and imposed a tax on different classes of personal property made taxable by prior legislation, and provided the machinery for its collection. The fourth section of the act imposed a tax for state purposes upon the capital stock of corporations, except banks, savings institutions and foreign insurance companies, and the seventeenth section laid a tax of four mills on mortgages, money owing by solvent debtors, etc., "in the hands of individual citizens of the State," but exempted from all taxation, except for state purposes, mortgages, judgments, recognizances, and money due on articles of agreement for sale of real estate. The Act of June 30, 1885, P. L. 193, made no change in the subjects of taxation nor any provision for a capital stock tax. It imposed a state tax of three mills on mortgages, etc.

The Act of June 1, 1889, P. L. 420, is a supplement to the Act of 1879. It is comprehensive in its terms and reënacts all prior tax legislation, both as to personal property and capital stock. The first section imposes a three mills tax for state purposes on the personal property therein enumerated, owned by any individual or corporation, except as therein excepted, whether held in his or its own right or in a fiduciary capacity, and the following seventeen sections provide the necessary machinery for the assessment and collection of the tax. The nineteenth section requires corporations to be registered, the twentieth section, to report to the auditor general for taxation of capital stock, and the twenty-first section imposes a tax on capital stock of corporations to

be computed in the manner therein specified. It is provided in the last named section that corporations liable to tax on capital stock, under this section, shall not be required to pay any further tax on the securities "belonging to them and constituting any portion of their assets included within the appraised value of their capital stock." The capital stock of manufacturing corporations is exempted from taxation. The act repeals certain sections, including Section 4, of the Act of 1879, and part of the Act of 1885, and all other sections of those acts and other acts inconsistent therewith or substantially reënacted by this act.

The Act of June 8, 1891, P. L. 229, supplementary to the former acts, changes the personal property tax from three to four mills and amends various sections of the Act of 1889, including Sections 1, 20, and 21, so that corporations liable to a capital stock tax under the last named section should not be required to make report or pay any further tax on the securities owned by them "in their own right." The Act of June 8, 1893, P. L. 353, amends only Section 21 of the Act of 1891, but makes no substantial change in the exemption proviso to that section of the act. An ineffectual attempt was made by the passage of the Act of June 7, 1907, P. L. 430, declared unconstitutional by reason of the defective title (Provident Life and Trust Co. v. Hammond et al., 230 Pa. 407), to amend the Act of June 7, 1879, so as to insert in the proviso to the Act of 1893 the words, "and in which the whole body of stockholders or members, as such, have the entire equitable interest in remainder," found in the subsequent Act of June 7, 1911, P. L. 673. The Act of May 11, 1911, P. L. 265, amended only the first section of the Act of 1889, as amended, and relieved fire companies, etc., from taxation.

The Act of June 7, 1911, amends the Act of 1879, as supplemented by the Acts of 1889, 1891 and 1893, "relating to taxing bonds, mortgages, and other securities." It amends Section 21 of the Act of 1893 which was

a supplement to the Act of 1889. It imposes a state tax of five mills on the capital stock of corporations with the following proviso: "That corporations......liable to tax on capital stock, under this section, shall not be required to pay any further tax on the mortgages, bonds, and other securities owned by them, and in which the whole body of·stockholders or members, as such, have the entire equitable interest in remainder.; but such corporations......owning or holding such securities as trustees......or in any other manner than for the whole body of stockholders or members thereof as sole equitable owners in remainder, shall return and pay the tax imposed by this act upon all securities so owned or held by them, as in the case of individuals." It will be observed that this amendment omits the phrase, "in their own right," contained in the Act of 1893, and inserts "in which the whole body of stockholders or members, as such, have the entire equitable interest in remainder." We decided in Provident Life & Trust Co. v. McCaughn, 245 Pa. 370, that the plaintiff's insurance assets were held for the policyholders as equitable owners in remainder, and not for the whole body of stockholders, and that, therefore, these assets were not exempt from taxation under the·Act of 1911.

The next and final legislation on the subject are the two acts of 1913, June 17 and July 22. It is conceded that the first act covers only the subject-matter of the first eighteen sections of the Act of 1889, as amended. It provides in the first section for levying and collecting a tax for county purposes on the personal property therein enumerated and exempts therefrom securities held by corporations in their own right, and, in the seventeenth section, for a State tax of four mills on scrip, bonds, or certificates of indebtedness. The subjects of taxation are substantially the same as in former laws, but the act exempts from its provisions life and fire insurance corporations "having no capital stock." It is provided in Sections 1 and 17 that corporations liable to

a capital stock tax shall not pay any further tax, local
or state, on the securities named in those sections and
owned by the corporations in their own right, but they
shall pay the tax on such securities when held in trust.
This is essentially the same exempting proviso as was
contained in the valid legislation imposing the capital
stock tax passed prior to the Act of June 7, 1911. The
act specifically repeals, inter alia, the first eighteen sec-
tions of the Act of 1889 and parts of the Act of 1891,
"and all other sections and parts of the said acts which
are inconsistent herewith or which are hereby substan-
tially reënacted, and all other acts or parts of acts in-
consistent herewith or which are hereby substantially
reënacted." It does not cite for repeal, nor repeal in
terms, Sections 19, 20 and 21 of the Act of June 1, 1889,
as amended, imposing the capital stock tax, nor the Act
of June 7, 1911, nor any part thereof. The acts re-
pealed relate to the personal property tax.

The plaintiff company relies on the Act of June 17,
1913, to relieve it from taxation on its insurance assets.
It contends that the act repeals the Act of June 7, 1911,
or the clause in the exempting proviso of that act, "and
in which the whole body of stockholders or members, as
such, have the entire equitable interest in remainder,"
and that the Act of June 17, is the only act which
imposes a tax for either State or county purposes on
mortgages, bonds, or other securities.

As the briefs filed by counsel of both parties disclose,
the plaintiff company has on numerous occasions been
required to defend in the courts its right, under the tax
laws of the State, to exemption from taxation of its in-
surance assets. In 1900 the plaintiff filed a bill to re-
strain the tax officers of Philadelphia from taxing the
property, and we sustained its contention and held that
these assets were not taxable under the tax legislation
then in force, as by the proviso to Section 21 of the Act of
1891 corporations paying a tax on their capital stock
were not required to pay a further tax on the securities

held by them in their own right: Provident Life & Trust Co. v. Durham, 212 Pa. 68. In 1907 another unsuccessful effort was made by the tax authorities of the city to tax these assets under the act passed that year, but we held the act to be unconstitutional: Provident Life & Trust Co. v. Hammond, 230 Pa. 407. This decision was immediately followed by the passage of the Act of June 7, 1911, amending the twenty-first section of the Act of 1889, as amended, which imposed a capital stock tax on corporations with the exemption above noted. The plaintiff again declined to pay a tax on its insurance assets, and, on a bill filed to restrain its collection, the trial court entered a decree in its favor. An appeal was taken to this court: Provident Life & Trust Co. v. McCaughn, 245 Pa. 370. In that case the company attacked the constitutionality of the Act of 1911, contending that it was unjustifiable classification, and that its application to the company would result in unlawful discrimination and double taxation. We reversed the decree of the court below, sustained the act, and held that it created a new and valid classification for the purposes of taxation, and that the plaintiff company was within the class.

We are clear that the legislature did not intend to and did not repeal the nineteenth, twentieth and twenty-first sections of the Act of 1889, as amended by the subsequent legislation down to and including the Act of 1911, when it passed the Act of June 17, 1913. If this conclusion be correct, Provident Life & Trust Co. v. McCaughn, supra, rules this case in favor of the defendants, and the insurance assets of the plaintiff are taxable under the provisions of the present tax laws of the Commonwealth. We think the legislative intent in the enactment of the Statute of 1911 is shown by the general course of prior legislation on the subject and the decisions of this court to which we have referred, as well as by the manifest purpose of the last two statutes. To repeal an express enactment by implication, requires a strong and clear inconsistency between the laws: Street v. Common-

wealth, 6 W. & S. 209; Commonwealth ex rel. Graham v. DeCamp, 177 Pa. 112; Jackson v. Penna. R. R. Co., 228 Pa. 566. Under the legislation prior to the Act of 1911, the plaintiff's insurance assets, as decided by this court, were not subject to the personal property tax. The purpose of the legislature to tax the property was disclosed as far back at least as 1907 when that body made the abortive attempt to amend Section 21 of the Act of 1889 so as to limit or narrow the exemption from payment of the personal property tax to securities held by corporations "in which the whole body of stockholders or members, as such, have the entire equitable interest in remainder." As the litigation discloses, the tax officials believed prior to this time that the assets were taxable under the legislation then in force in the State. When, and as soon as, it was judicially determined that this was an erroneous view of the law, the assembly passed the Act of 1907. Within a few months after that act had been declared unconstitutional, the legislature made another effort to tax these assets which resulted in the passage of the amendatory statute of 1911. This act, as we have seen, limited the exemption to which corporations were entitled under Section 21 of the Act of 1889 to securities held by them in which the whole body of stockholders, as such, had the entire equitable interest in remainder, and, with the other amendments to that statute, it then constituted the law in this State authorizing the taxation of personal property and the capital stock of corporations.

We see no evidence of a legislative intent to repeal the Act of 1911 in passing the Act of June 17, 1913. On the contrary, the two Acts of 1913 show unmistakably the intention to continue in force the Act of 1911 including the limitation on the exemption clause. Immediately prior to the passage of the Act of June 17, 1913, as will be observed, the personal property tax was levied and collected under the first eighteen sections in the Act of 1889, as amended, and the capital stock tax, under Section

21 of that act, as amended by the Act of 1911. These acts were in pari materia and, as pointed out above, constituted the whole body of law on the subject when the Act of June 17 was passed. This last act contains nineteen sections including the repealing section. The history of the legislation taxing personal property in this State shows that the Act of June 17, 1913, is a codification or compilation of the prior laws relating to a personal property tax. The principal purpose of the enactment, we think, is to give the tax to the counties instead of, as theretofore, having it collected as a State tax and part of it paid to the counties. It provides in Section 1 for levying and collecting a personal property tax for county purposes, and in Section 17 for a State tax of four mills on scrip, bonds, or certificates of indebtedness issued by private and public corporations. There is no provision in the act imposing a capital stock tax on corporations, yet a proviso in the two sections relieves corporations liable to a capital stock tax for state purposes from the payment of taxes on the securities, named in the respective sections, owned by the corporations in their own right. This exempting provision clearly recognizes a law then in force imposing a capital stock tax, which, as will be observed, was the Act of 1911.

If we turn to the repealing section (19) of the Act of June 17, it is still more apparent that the legislature did not intend to abrogate the Act of 1911 nor any part of its provisions. The repeal of statutes by implication is not favored, and, unless a statute is repealed in express terms, the presumption is always against an intention to repeal if there is not an irreconcilable repugnancy between the provisions of the two acts. It is a well recognized principle of statutory construction that a merely affirmative statute shall not be held to repeal a previous one, if by fair and reasonable construction both can stand consistently together: Homer & Son v. Commonwealth, 106 Pa. 221, 226; Rodenbaugh v. Philadelphia Traction Co., 190 Pa. 358, 361. The legislative in-

tent is the vital force of an act of assembly, and even if a subsequent statute, taken strictly and grammatically, is contrariant to a previous statute, yet if, at the same time, the intention of the legislature is apparent that the previous statute shall not be repealed, it remains unaffected by the subsequent one: Craies, Stat. Law, 311. In Sifred v. Commonwealth, 104 Pa. 179, 181, we said: "The leaning of the courts is strong against repealing the positive provisions of a former statute by construction. The more natural, if not necessary, inference in all such cases is, that the legislature intends the new law to be auxiliary to, and in aid of the purposes of, the old law. There should therefore be such a manifest and total repugnancy in the provisions of the new law as to lead to the conclusion that the latter law abrogated, and was designed to abrogate, the former." It is a cardinal rule of construction in ascertaining the legislative intent in the enactment of a statute that where an act repeals a prior act, or certain sections of a prior act, all other prior act or sections of the act must be regarded as still in force under the maxim expressio unius est exclusio alterius. Broom, Legal Maxims, 8th Eng. Ed., 514, says that no maxim of the law is of more general and uniform application; and that it is never more applicable than in the construction and interpretation of statutes.

Tested by these well settled principles of statutory interpretation, it is clear, we think, that it was not the intention of the legislature of 1913 that the Act of June 17, 1913, should repeal the Act of 1911 nor any of its provisions. The first eighteen sections of the Act of 1889, as amended, imposed the personal property tax and provided for its collection. These sections of the Act of 1889, parts of the Act of 1891, the Act of May 11, 1911, and certain other acts were repealed in terms by the Act of June 17, 1913. The fourth section of the Act of 1879, authorizing a capital stock tax, was repealed by the Act of 1889 which in its twenty-first section reimposed a capital stock tax on corporations, and in Sections 19 and 20

provided for its collection. Section 21 of the Act of 1889 was amended by the Acts of 1891, 1893 and 1911, and, under the latter act, we held in the McCaughn case that the insurance assets of the plaintiff company were taxable. The sections of the several acts imposing the capital stock tax have not in terms been repealed, and if they are not now in force it is only because they are inconsistent with, or substantially reënacted by, the Act of June 17, 1913. The learned counsel for the plaintiff contend that they are inconsistent with the provisions of the Act of June 17, 1913, but we think the contention untenable. If the legislature of 1913 had intended to repeal the three sections of the Act of 1889, as amended, imposing the capital stock tax, it would have repealed in terms the first twenty-one sections instead of the first eighteen sections of the act as it did. There can be no reason, real or apparent, for excluding the three sections from the repealing clause of the Act of 1913 if they were to be stricken from the tax laws of the State. It is manifest that their exclusion was intended to leave in full force the three sections dealing with the capital stock tax. By parity of reasoning, the Act of 1911, amending Section 21 of the Act of 1889, as amended, was not intended to be repealed. The repealing section of the Act of 1913, as will be observed, specifically repeals not only parts of certain acts but other entire acts dealing with the subject. Why was the Act of June 7, 1911, omitted from the repealing section if intended to be repealed in whole or in part, while the Act of May 11 of the same year was specifically included in the section? Laws are presumed to be passed with deliberation, and with full knowledge of all existing ones on the subject: Sedgwick on Construction of Stat. & Const. Law (2d Ed.), 106; Howard Association's App., 70 Pa. 344. The legislature of 1913 is presumed to have had knowledge of the Act of 1911 and of all its provisions imposing a capital stock tax with the limitations on the exemptions contained in it. The legislature is not only presumed to have known

of the Act of 1911, but had actual knowledge of it, as there was pending before it at the same time another bill, citing the act for amendment, which subsequently became the Act of July 22, 1913. That act is identical with the Act of 1911 except that it does not apply to corporations organized for laundering purposes. In view of these facts, it is inconceivable that the legislature of 1913 regarded the Act of 1911 or any of its provisions, or intended that it should be considered, as inconsistent with the Act of June 17, 1913. This act did not repeal the only statute imposing the capital stock tax, but, as pointed out above, recognized it as in force, and supplied the repealed sections of the Act of 1889, imposing a personal property tax. This act and that of 1911 are in pari materia, and cover the provisions of prior legislation providing for levying and collecting a personal property tax and a capital stock tax on corporations, and our construction of the recent acts makes the legislation on the subject a consistent and harmonious system.

We have considered with care the elaborate briefs of counsel as well as the prior legislation imposing taxes for revenue in this State to which our attention has been directed, and are all of opinion that, in passing the Act of June 17, 1913, it was not the intention of the legislature to amend or repeal the Act of June 7, 1911, nor any of its provisions, and that the earlier statute is still in force. It follows, therefore, that the learned court below erred in sustaining the plaintiff's bill and restraining the assessment and collection of the personal property tax on the plaintiff's insurance assets.

The decree is reversed, and the bill is dismissed at the costs of the plaintiff.