## Erie Appeal.

Argued November 13, 1945. Before BALDRIGE, P. J., RHODES, RENO, DITHRICH, ROSS and ARNOLD, JJ. (HIRT, J., absent).

*Edward M. Murphy,* City Solicitor, with him *Henry R. Jeffs,* Assistant City Solicitor, for appellant.

*William W. Knox,* School District Solicitor, for appellee.

OPINION BY RHODES, J., April 10, 1946:

This is an appeal by the City of Erie from an order of distribution of the proceeds of a public sale of a lot by the County Commissioners of Erie County, under

section 17 of the Act of May 29, 1931, P.L. 280, as amended by the Act of May 21, 1943, P. L. 364, 72 PS § 5971q.

On December 20, 1937, the County Commissioners of Erie County purchased lot No. 190, Frontier Place Subdivision, Erie, at county treasurer's tax sale for delinquent county taxes. On June 27, 1944, the county commissioners exposed the property to public sale and fixed an upset price sufficient to pay all costs, taxes, and municipal claims, according to law, but were unable to obtain a bid sufficient to meet the upset price. Thereupon the county commissioners petitioned the Court of Common Pleas of Erie County for permission to sell said property at public sale, freed and discharged of all taxes, municipal claims, liens, mortgages, charges and estates of whatsoever kind. The court having granted this petition, the county commissioners on July 21, 1944, sold the said lot at public sale for the sum of $1,200, which, after deductions for advertising and costs, left $1,172.42 available for distribution.

When the lot was first sold to the commissioners in 1937 at county treasurer's sale for unpaid county taxes for the years 1932-1934, there were also outstanding school taxes, city taxes, and municipal liens. At the time of the sale by the commissioners on July 21, 1944, the tax claims against the property included county taxes from 1933 to 1944 in the amount of $190.08; school taxes from 1932 to 1943 in the amount of $542.55; city taxes from 1931 to 1944 in the amount of $565.73, or a total of $1,298.36. In addition, the city held paving and sewer liens in the amount of $2,002.74.

The city petitioned the court below to confine the distribution of the proceeds of sale to the taxes as they existed at the time the commissioners purchased the lot in 1937, to which the school district and the county objected, contending that all county, school, and city taxes up to the time of the sale by the commissioners in 1944 should participate according to their respective priori-

ties. Thus the city sought to have applied the balance of the proceeds of the sale, after the payment of the taxes to 1937, inclusive, on its municipal liens against the lot. The city did not revive its 1933 tax lien against the lot within five years, but it contended that this tax lien should also be included in the distribution on the theory that, as the lien was valid at the time the commissioners purchased the lot for delinquent taxes, its status was therefore established, and that it was unnecessary to revive it. The court below held that the proceeds of the sale by the commissioners should be first applied to the city, school, and county taxes, with penalties and interest, which had accrued to the time of the sale in the order of their respective priorities; but that the 1933 tax lien of the city should be excluded from participation in the proceeds of the sale because the lien had not been revived within five years.

From the court's order the City of Erie has appealed.

We are of the opinion that the court below correctly concluded that the city, school, and county taxes continued to accrue against the lot in question after it had been purchased at the tax sale by the commissioners, and title taken by the county, and that in the distribution of the proceeds of the sale those taxes which accrued after 1937 were to participate.

When the commissioners purchased the lot at county treasurer's tax sale in 1937, the county took title to it as trustee for the benefit of the several taxing authorities in proportion to their respective interests. *Andrews Land Corporation's Appeal,* 149 Pa. Superior Ct. 212, 27 A. 2d 700. The city, the school district, and the county, the taxing authorities concerned, thereupon acquired equitable interests in the lot purchased by the commissioners for unpaid taxes. Act of May 21, 1937, P. L. 787; Act of May 21, 1943, P. L. 282, 72 PS § 5878a et seq.; *Zerbe Township School District et al. v. Thomas et al.,* 353 Pa. 162, 170, 44 A. 2d 566.

The Act of May 21, 1937, P. L. 787, as amended, 72 PS § 5878a et seq., relates to the compromise or reduction

of tax claims on real property purchased by the county or municipal subdivisions for nonpayment of taxes, and to the reconveyance or private sale of such property with the right of each political subdivision to petition the court for a compromise agreement or sale authorized by the act.

Section 4 of the Act of May 21, 1937, P. L. 787, as amended, 72 PS § 5878d, provides that the proceeds of a compromise or private sale under the act shall be distributed, first to the costs of sale whereat the property was acquired, and the balance to the respective taxing authorities in proportion to their tax and municipal claims. In *Erie School District Appeal*, 155 Pa. Superior Ct. 564, 39 A. 2d 271, we held that, in the distribution of the proceeds of a compromise or private sale under the act, taxes were to be paid in full before municipal liens; and in *Lackawanna County Appeal*, 157 Pa. Superior Ct. 137, 42 A. 2d 103, we held that the words of the act "in proportion to their tax and municipal claims" applied not merely to the amounts of the claims, but to their respective priorities, and that the oldest tax having priority was to be paid first.

Section 17 of the Act of May 29, 1931, as amended, 72 PS § 5971q, provides for sale by county commissioners of real property purchased by them at tax sales, for the fixing of an upset price to be realized for any property exposed to sale by them, and for proceedings for sale free from liens and claims where they have been unable to obtain a bid sufficient to pay the upset price. This section of the act relates to public sales, and provides for the proceeds realized therefrom to be distributed, to payment, first, of the costs of sale; second, the tax liens of the Commonwealth, if any; third, taxes due to various taxing districts, in proportion to their respective interests; fourth, municipal claims due on such property; and fifth, mortgage and other liens, in order of their priority. This section also permits redemption by any owner of property so sold within ten days after the date of sale by complying with the terms set forth.

Obviously, the proceeds of the sale in the present case are to be distributed first to "taxes due the various taxing districts, in proportion to their respective interests"; and the oldest taxes having priority shall be paid first, but there is no priority among the taxes of the various taxing authorities for the same years. See *New Castle School District v. Travers et al.*, 353 Pa. 261, 44 A. 2d 665.

Appellant does not assert that the distribution of the proceeds of a public sale, under the Act of May 29, 1931, § 17, as amended, 72 PS § 5971q, differs from that of a private sale under the Act of May 21, 1937, P. L. 787, § 4, as amended, 72 PS § 5878d. But the distribution for which appellant contends would embrace the payment of only valid and collectible claims, existing as of December 20, 1937, the date of the county treasurer's sale, with the balance of the proceeds of the public sale by the commissioners on July 21, 1944, applied to its municipal claims.

Sections 7 and 8 of the Act of May 29, 1931, P. L. 280, as amended, 72 PS §§ 5971g, 5971h, provide for the procedure to be followed when the treasurer sells lands for delinquent taxes. Section 10, 72 PS § 5971j, provides for purchase by the county commissioners where the amount bid at treasurer's sale is insufficient to cover taxes, interest, and costs. Section 15, 72 PS § 5971o, provides that, where the land is redeemed by payment of the taxes for which the land was originally sold, plus costs and fifteen per cent, "and any taxes which may have been levied against any such property since the treasurer's sale," the county treasurer shall "receive and receipt for the same, and pay . . . the accrued taxes to the district entitled thereto."

Section 16, 72 PS § 5971p, significantly provides as follows: "When the county commissioners shall purchase any real property at a county treasurer's sale, they shall provide a book wherein shall be entered: (a) the name of the person as whose land the same was sold; (b) a brief

description of the property, together with any lot and block number; (c) the amount of taxes, interest, and costs for which it was sold. Such property shall not, so long as it remains the property of the county, be charged in the duplicate. During the redemption period following such sale, if the land remains unredeemed, the commissioners shall, in separate columns in the same book, charge every such tract of land with like county, city, borough, town, township, school and poor taxes, as would have been chargeable against the land had the same not been purchased by the county commissioners. The right of redemption of lands heretofore purchased by the county commissioners shall remain in the real owner of such lands, or other persons interested, for five years after such sale to the county commissioners, and of all lands hereafter purchased by the county commissioners, such right shall remain for two years after such sale, and such redemption may be accomplished by a payment, within such period, to the county treasurer of all taxes, interest, and costs due thereon at the time of sale, and interest thereon, and also the taxes and interest which have been annually levied and charged thereon after the sale, and interest thereon beginning on the first day of January in the year succeeding the year when the respective taxes were levied. All redemptions of property purchased by the county commissioners shall be noted upon their records, and the county treasurer shall forthwith cause an entry of redemption to be made on the records in like manner as if such property were purchased by other than county commissioners."

Section 17, 72 PS § 5971q, provides, inter alia, that in fixing the upset price on a sale held by the county commissioners, there shall be included "tax liens filed in the prothonotary's office of the proper county, taxes returned to the county commissioners and entered upon the Tax Return Docket in their office and indexed in the tax lien index in their office, all accrued but unfiled taxes assessed and levied against the property, and the

amount of the municipal claims against the property."

These provisions plainly indicate the legislature did not intend that land purchased by the county commissioners for unpaid taxes should be tax exempt during the period of redemption. Otherwise, the person redeeming would benefit at the expense of the taxing authorities. The title of the county is not absolute where the right to redeem is present; and such land is not public property within the ordinarily accepted meaning of the term. There is nothing in the General County Assessment Law (Act of May 22, 1933, P. L. 853, as amended, 72 PS § 5020-201 et seq.) which would exempt such property on the ground that it is "public property" during the time it is held by the county commissioners under this type of ownership. See *Pittsburgh v. Allegheny County,* 351 Pa. 345, 41 A. 2d 639; *Pittsburgh School District v. Allegheny County,* 347 Pa. 101, 105, 106, 31 A. 2d 707; *Easton v. Koch et al.,* 152 Pa. Superior Ct. 327, 31 A. 2d 747.

Nor does it appear that any other result would follow after the period of redemption has expired. In *Falls Creek Borough v. Jefferson County et al.,* 45 D. & C. 367 (C. P. Jefferson County), LONG, P. J., reviewed at length the Act of May 29, 1931, P. L. 280, and previous legislation on which that act was based. Judge LONG held that taxes accrued against the land, after purchase by the county commissioners, and were payable to the various taxing authorities, whether the land was subsequently redeemed or was sold by the commissioners after the period of redemption had expired; that otherwise situations could arise where a borough, township, or other taxing district would be unable to function because the greater portion of its taxes had been returned by its collector to the county commissioners and the real estate against which the return was made purchased by the commissioners and sold by them for failure to redeem. We agree that the trusteeship of the county exists until distribution of the funds received has been made.

We think the analysis and the conclusion of Judge LONG on the exact question now before this court are sound. See, also, *Township of Rush v. Schuylkill County*, 100 Pa. 356.

Appellant relies upon the principle announced in *Andrews Land Corporation's Appeal, supra*, 149 Pa. Superior Ct. 212, 27 A. 2d 700, that, where the county commissioners purchase land at tax sale pursuant to the Act of May 29, 1931, P. L. 280, the county takes title (page 214 of 149 Pa. Superior Ct., page 701 of 27 A. 2d), "as trustee for the benefit of all the taxing authorities, county, city, borough, town, township, school district or poor district, which had valid, enforceable claims for unpaid taxes against said land, in proportion to their respective interests." Appellant's argument apparently is to the effect that, the county having held the lot as trustee, taxes did not continue to accrue against it, and that consequently the taxes from 1937 to 1944 should not be allowed to participate in the distribution of the proceeds of the sale of the lot. In the *Andrews case* we held that where the county commissioners had purchased land at county treasurer's sale, the city had no authority to sell the land again for taxes due the city, and thus attempt to destroy the title of the county. It seems to us, however, contrary to appellant's view, that the principle of trusteeship in the county would mean that taxes due the various municipal subdivisions did continue to accrue after the county took title.[1]

The other matter for consideration is the right of appellant to participate in the distribution to the extent

---

[1] In *Benzinger Township School District v. Elk County*, 50 Pa. D. & C. 449, Judge HIPPLE held that where land acquired by county commissioners for unpaid taxes was later sold by them for a sum in excess of the taxes, interest and penalties due thereon, each of the taxing authorities was entitled to receive, in addition to the amount due to it for unpaid taxes, interest and penalties, its proportionate share of the profits or surplus. This footnote appears in *Zerbe Township School District et al. v. Thomas et al.*, 353 Pa. 162, 170, 44 A. 2d 566.

of its 1933 tax claim in the amount of $55.67, which was secured by the lien filed December 14, 1936, and not revived thereafter by scire facias.

The court below was of opinion that the tax for which the lien had expired was excluded from the right to participate in the proceeds from public sale by the commissioners subsequently held.

Section 15 of the Municipal Lien Act of May 16, 1923, P. L. 207, 53 PS § 2035, provides that tax liens not properly revived within a five-year period shall automatically expire. Section 17 of the Act of May 29, 1931, P. L. 280, as amended, 72 PS § 5971q, states that in selling at public sale the county commissioners are to include, inter alia, "tax liens filed in the prothonotary's office of the proper county" in fixing the upset price. The court below held that this act meant only tax liens which were valid and subsisting at the time of the sale by the county commissioners. As to tax liens valid when the property was purchased by the county commissioners, we do not agree that the act precludes participation.

The Act of 1931, it is true, contains no provision validating tax liens which would otherwise previously expire under the provisions of the Municipal Lien Act of 1923.[2]

But the result of the court's construction would modify the extent of the trusteeship of the county, and destroy in part appellant's equitable interest created at the time of the tax sale, appellant having at that time a valid, enforceable claim for unpaid taxes against the land, and for which a tax lien had been filed.

The status of the county as a trustee, under such circumstances, has been recognized by both the Supreme Court and this court. *Zerbe Township School District et al. v. Thomas et al.*, 353 Pa. 162, 44 A. 2d 566; *Andrews Land Corporation's Appeal,* supra, 149 Pa. Superior Ct. 212, 27 A. 2d 700. And as we have previously

---

[2] But see section 9 of the Act of May 29, 1931, P. L. 280, as amended, 72 PS § 5971i.

stated, such trusteeship exists until the distribution of the funds received has been made.

The fallacy of the court's assumption that the city tax to the extent represented by the lien was not entitled to participate in the distribution because the lien was not revived, is found in the fact that appellant obtained an equitable interest in the lot when the county commissioners bought it and the county took title, and as long as appellant's tax remained unpaid the interest of appellant pro tanto continued.

The present case concerns distribution only to those having equitable interests, and there is no relevant distinction between one and another. We think the nature of appellant's right to participate, once acquired, precluded the loss of such right during the trusteeship of the county. It would serve no purpose, and it would not have added anything for appellant to have revived the lien, as the land was held by its own trustee. The existence of the equitable interest created at an earlier date, determined the right to participate in the proceeds of sale. The equitable interest of appellant came into being at the time the county commissioners purchased the lot at tax sale and the county acquired legal title; and this equitable interest was protected during the existence of the trusteeship. A lien under the Municipal Lien Act of 1923 is continued only if requirements of the law are complied with; but an equitable interest, to the extent of the unpaid tax, created at the time of tax sale, is not destroyed by nonrevival of the tax claim. This follows from the nature of an equitable interest. An equitable interest is that kind of interest which has its origin in the principles, standards, and rules developed by courts of chancery. 1 Restatement, Trusts, § 2 (f); 1 Restatement, Property, § 63. An equitable interest has also been defined as that which can be sustained or made effective or available in a court of equity. *Provident Life & Trust Co. v. McCaughn*, 245 Pa. 370, 377, 91 A. 672. Appellant's equitable interest was ac-

quired as the result of a valid tax claim. The tax lien is not the equivalent of a legal interest, and nonrevival is not comparable to the extinguishment of a legal interest in land whereby an equitable interest in the land might also be destroyed. Only those having equitable interests are here concerned, and the right accrued to each having an equitable interest to have the proceeds of the sale "divided according to natural right or natural justice." *Provident Life & Trust Co. v. McCaughn,* supra, 245 Pa. 370, 377, 91 A. 672.

The property here involved was purchased by the county commissioners at tax sale and held by the county for the satisfaction of the taxes then due to all the interested taxing authorities, and for the satisfaction of the additional taxes due them and which accrued during the period of trusteeship. It is reasonable that each should receive their proportionate share of the proceeds of sale made by the county as trustee for the benefit of all of them in the manner indicated.

Order of distribution is affirmed except as to the exclusion from participation of the 1933 taxes of the city, to which extent the order is reversed; the record is remitted to the court below with direction to make distribution in accordance with this opinion. The costs are divided between appellant and appellee.