## Zerbe Township School District et al. v. Northumberland County Commissioners

*Richard Henry Klein*, for petitioners.
*Frederick E. Lark*, for respondent.

FORTNEY, P. J., June 3, 1946.—This matter comes before the court on a petition by the parties in interest, on a case stated, for a declaratory judgment under the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, 12 PS §831, et seq., supplemented by the Act of May 22, 1935, P. L. 228.

The agreed facts are that the county commission-

ers of Northumberland County, a county of the fifth class, at a treasurer's tax sale on April 29, 1943, and again on January 25, 1945, purchased certain lands in Zerbe Township, this county, for unpaid taxes and received from the treasurer of Northumberland County, and have had duly recorded, deeds for the said lands.

At various times during the months of September and October 1945, in compliance with the provisions of the Act of July 28, 1941, P. L. 535, the commissioners entered into agreements for redemption of said lands by instalment payments.

On March 4, 1946, the county commissioners, sitting as a board of assessment and revision of taxes, completed the hearings of the appeals and in each case entered its order as to the final valuation of taxable lands for the year 1946 and subsequent thereto, and prior to March 15, 1946, the chief assessor made such changes in the assessment roll as to make it conform to the orders of the said board. The chief assessor prepared copies of the assessment roll of taxable real estate owners for the year 1946, and on March 15, 1946, delivered the same to the secretary of the school board and the secretary of the supervisors of Zerbe Township. The copies of the assessment rolls thus delivered contained, inter alia, the tracts of land permitted to be redeemed under agreement by the county commissioners. The instalments due under the redemption agreement have not been paid in full on said tracts of land, and title thereto remains in the County of Northumberland.

Then the School District of Zerbe Township, a district of the fourth class, and the Township of Zerbe, a township of the second class, through its duly authorized officers, demanded that the chief assessor remove the said tracts of land, for which the said instalment redemption agreements had been entered into, from the copy of the assessment roll for the

year 1946 of real estate owners in Zerbe Township. This the chief assessor refused to do.

The following legal question is therefore submitted for declaratory judgment by the court: Whether the chief assessor should or should not place on the copy of the assessment roll furnished to the school district and the township the tracts of land which are owned by the county, and for which instalment redemption agreements have been entered into under the Act of July 28, 1941, P. L. 535.

The decision of the question involved requires an interpretation of the Act of July 28, 1941, P. L. 535, 72 PS §6105.1, etc. A relevant portion of the act, which provides for the redemption of real property purchased by political subdivisions at tax sales, in section 2 thereof, is as follows:

"In order for any person who was or is entitled by law to redeem such property to receive the benefits of the installment system of payment authorized and provided by this act, they shall enter into a written agreement with the taxing authorities of the said political subdivision, which shall be prepared by the solicitor for such political subdivision, in the nature of a lease, which shall require at the time of signing the agreement the payment of all costs incident to the aforesaid tax sale and twenty per centum of the amount of all taxes and municipal claims and penalties and interest accrued thereon charged against said property, and the payment of the remainder of said amount of tax and municipal claims, penalties and interest in four equal installments, each of which shall be made within one year after the last day fixed by said agreement for the payment of the previous installment. Said agreement shall further require that the respective current taxes assesssed on said real property for each year during such installment period shall be paid before a penalty attaches thereto."

In compliance with the provisions of this section of the act, the county commissioners entered into a written agreement with the owners and collected and acknowledged receipt of 20 percent instalment payment of the total taxes and municipal claims and costs of sale, and in addition, *the current taxes due on the property.*

The subsequent sections of said Act of July 28, 1941, P. L. 535, 72 PS §6105.1, etc., provide for the conveyance of the said property to the person with whom the agreement is entered into upon final payment of the total amount of said taxes, costs, municipal claims, penalties and interest as aforesaid and the payment of all current taxes as aforesaid.

Another relevant provision of the Act of July 28, 1941, supra, sec. 5, under "Disposition of proceeds of Purchase", provides:

"The proceeds of such agreement and payments shall be distributed, upon the receipt thereof, to the respective political subdivisions and taxing authorities in proportion to their tax and municipal claims against said property."

It seems to us that in this section the legislature meant by "proceeds of agreement" the instalments paid under the agreement to redeem and by "payments" it meant payment of current taxes. It thus becomes perfectly obvious that if the proceeds of the redemption agreement and current taxes are to be distributed to the respective political subdivisions and taxing authorities, they must first be collected by the county commissioners. This seems to be a reasonable interpretation of the act, especially when we consider that to the agreement to redeem there are two parties—one designated as the district, and the other designated as the owner.

It is well established that when the county commissioners purchased the land in question at the treasurer's sale for unpaid taxes, the county took

title to it as trustee for the benefit of the several taxing authorities in proportion to their respective interest and this is a continuing trusteeship so long as title to said land remains in the county: Erie Appeal, 159 Pa. Superior Ct. 18. That taxes due the various municipal subdivisions continue to accrue after the county takes title to the land purchased by the county commissioners at the county treasurer's sale for delinquent taxes is likewise beyond question.

A reference to the Act of May 24, 1945, P. L. 945, 72 PS §5971 p, shows that it provides that when the county commissioners purchase real property at a county treasurer's sale, they shall provide a book, wherein shall be entered:

(a) The name of the person as whose land the same was sold.

(b) A brief description of the property, together with any lot or block number.

(c) The amount of taxes, interest and costs for which it was sold, and further, *such property shall not, so long as it remains the property of the county, be charged in the duplicate.*

The rule of strict construction of tax statutes clearly indicates that this is a mandatory provision, and it seems that taxes charged against lands held by the county through purchase at tax sale are taxes returned, even though not levied and assessed: Pittsburgh Trust Company v. Red Bank Coal Company, et al., 31 D. & C. 307.

We find, in Beaver County Trust Company, Trustee v. Beaver County Commissioners et al., 44 D. & C. 215, a guide for the procedure to be followed. In that case, an attempt was made to redeem land purchased by the county commissioners for unpaid taxes at a treasurer's sale. The question there involved was whether or not the method of redemption should follow the provisions of the Act of May 1, 1941, P. L. 31, or the Act of July 28, 1941. The relevant part

of the case to us is that the offer to redeem, and the tender of payment, both for the taxes due for the current year and for the payment of taxes under the instalment agreement, was made to the county commissioners of Beaver County and to the county treasurer.

The Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 52, provides that in ascertaining the intention of the legislature in enactment of a law, the courts may be guided by the following presumption, among others:

"(1) That the legislature does not intend a result that is absurd, impossible of execution or unreasonable;" . . .

The facts before us indicate clearly that the written agreement to redeem in this case is between the county commissioners and the owner; that at the time of the payment of the first redemption instalment the county commissioners did collect the current taxes and the owner agrees, in the agreement, to pay the remainder of taxes due. We conclude that it would be absurd and unreasonable for any other person than the county commissioners to collect the current taxes. In addition, it is to be noted that the commissioners must distribute the proceeds of the instalment agreement and payments received thereunder to the respective political subdivisions and that until payment of all taxes is had, title to the real property remains in the commissioners as trustees and we make the following

### Order

And now, to wit, June 3, 1946, being of the opinion that said tracts of land concerning which instalment redemption agreements have been signed under the Act of 1941, P. L. 535, should not be set forth by the chief assessor on the copy of the assessment rolls delivered by him to the said school district and the said township, and should not be placed by them on the duplicate delivered to the local tax collector, we direct

that the current taxes under the aforesaid instalment redemption agreement be paid through the office of the county commissioners to the county treasurer. All costs to be paid by defendants.