## Washington County Commissioners' Petition

*David H. Weiner*, for petitioners.

*John B. McCreight* and *Thomas L. Anderson*, for respondent.

Before Gibson, P. J., Carson and Cummins, JJ.

CUMMINS, J., December 4, 1946.—This case comes before the court on petition and answer.

On January 23, 1940, the lands of the Superior Mining Company were sold by the county treasurer for delinquent taxes, and the County of Washington purchased the same at public auction.

On May 27, 1946, the county commissioners of Washington County filed a petition for leave to sell the Superior Mining Company lands free and clear of all liens, and a rule was granted by the court upon all parties interested to appear and show cause why a decree should not be made that the said property be sold free and clear of all the respective mortgages, municipal claims and ground rents. Said rule was returnable to Monday, June 10, 1946, at 10 a.m., or as soon thereafter as the attention of the court may be had.

In this petition, beginning with paragraph 4, it appears that the county commissioners advertised said

property at public sale after fixing an upset price to be realized therefrom, which price was in the amount of $161,070.91, the said sale being duly advertised for Wednesday, May 15, 1946.

At this time the said property was exposed for sale at the upset price, and the county commissioners were unable to obtain a bid sufficient to pay said price.

This sale was duly postponed until June 17, 1946, at 10 a.m., and notice was given that the county commissioners would file their petition for leave to sell said property free and clear of all liens.

On June 10, 1946, an order was signed by the court, continuing the hearing on said petition to June 24, 1946, at 9:30 a.m. On June 24, 1946, the court ordered said property to be sold on July 15, 1946, at 10 a.m., clear of all mortgages, municipal claims and ground rents, to the "highest bidder at such sale".

According to a petition filed by the county commissioners on August 21, 1946, a public sale was held on July 15, 1946, at 10 a.m., and before the sale the county commissioners announced that they reserved the right to reject any and all bids for the said property. The property in question was knocked down to one Harry W. Trushel at a bid of $31,000, and public notice was given to him that within a reasonable time he would be advised of the acceptance or rejection of the said bid. Prior to the decision of the county commissioners to accept or reject said bid, Harry W. Trushel did tender the balance of the purchase money under said bid to the county commissioners. On August 9, 1946, the county commissioners did, at a regular meeting, decide to reject said bid as being inadequate, and the bidder was so notified.

In this petition the county commissioners asked the court to make an order authorizing and directing the county commissioners to resell said property clear of all mortgages, municipal claims, taxes and ground

rents. A rule was granted by the court on August 21, 1946, on Harry W. Trushel to show cause, if any he had, why the county commissioners should not be authorized to resell said property. The rule was returnable to August 29, 1946.

To this petition filed by the county commissioners, Harry W. Trushel, respondent, filed his answer, wherein he said: First, that the said advertisement and announcement of the reservation of the right to reject bids was without authority of, and was contrary to, the law and the said order of court; second, he denies that public notice was given to him that within a reasonable time he would be advised of the acceptance or rejection of his bid; third, that the property in question was irrevocably knocked down and sold to him, without conditions, and that the county commissioners then and there decided to accept his bid and that no notice was given to him that within a reasonable time he would be advised of the acceptance or rejection of his bid, and that, on the contrary, the only statement or notice then given him was by the agent of the county commissioners acting as the auctioneer, who said substantially as follows, "We will advise you when the commissioners have executed the deed"; fourth, that the county commissioners were then without authority to reject his bid or to reject or rescind the sale.

This case presents for our consideration and determination two questions: (1) Where county commissioners, having bought land at a treasurer's sale for delinquent taxes, then resell it under the Act of May 21, 1943, P. L. 364, amending section 17 of the general act relating to filing tax liens, approved May 29, 1931, P. L. 280, as amended, 72 PS §5971 (q), can they exercise an allegedly reserved right to reject bids (in order to accept a higher unspecified bid) after the property is actually struck down, the hand money paid and accepted, delivery of the deed promised by the

auctioneer, and the balance of the bid price tendered by bidder? (2) Does the court have authority to set aside the sale on such grounds?

It appears that the county commissioners, desiring to sell this mining property free and clear of all liens, etc., adopted the procedure provided by the Act of May 21, 1943, P. L. 364, permitting for the first time such divestiture as to lands affected by liens for taxes filed under the general Act of 1931.

In answer to the first question propounded by respondent, the Act of 1943 provides that the county commissioners may sell such lands at public or private sale in the manner provided by law, but they shall not be obliged to sell the same. We interpret this to mean that once the property is exposed to public sale and a bid accepted and the terms of the sale complied with, a deed must be delivered to the highest bidder.

The act provides: "The purchaser at such sale shall take, and forever thereafter have, an absolute title to the property sold, free and discharged of all tax and municipal claims, liens, mortgages, charges and estates of whatsoever kind."

We find nothing in this act giving the county commissioners the right to reject bids. It was not the purpose and intent of the statute to do this.

But for the sake of argument, if we assume reservation was proper, the bid of Harry W. Trushel was not rejected by the county commissioners before it was finally accepted on the day of sale. A subsequent rejection came on August 9, 1946, but we hold this was too late.

This is one of the few times the county commissioners have made use of the Act of 1943. They have usually negotiated private sales (not working divestiture), and submitted them for court approval under another statute, the Act of May 21, 1937, P. L. 787, as amended by the Act of May 16, 1945, P. L. 603,

72 PS §5878(a) et seq. Under the last named statute, we think it important to note here, the courts have authority to disapprove such sales for inadequacy of price. This statute may be distinguished in many ways from the Act of 1943, used in the case at bar.

We think it important to note that a petition was filed by the county commissioners, asking a public bid equal to the upset price, this price was not bid and the county commissioners postponed the sale and, in accordance with the statute, obtained a rule on the owners, creditors and other parties in interest to show cause why the property should not be sold divested of all liens and incumbrances. On the hearing, cause to contrary not being shown, the court made an order that this property be sold on July 15, 1946, without further advertisement, free and clear of liens and incumbrances, to the "highest bidder at said sale" and provided for distribution of the proceeds of sale.

The sale was held as advertised on July 15, 1946, and there was spirited and competitive bidding. The respondent was the highest bidder, with an offer of $31,000. This bid was not rejected. The property then and there was struck down to respondent and he was told he would be delivered a deed. Respondent complied with the terms of said sale and paid down 10 percent of this bid, which the county commissioners accepted, and still retain. On August 1, 1946, respondent tendered to the county commissioners the balance of the bid price, which they refused to accept, and he demanded a deed, which they refused to deliver. On August 9, 1946, the county commissioners took formal action, rejecting the respondent's bid.

At the oral argument between counsel for respondent and counsel for the county commissioners, it appeared that the county commissioners received a higher offer in price for the mining property, the amount not being disclosed. This fact does not appear

any place in the record. Because of this higher offer, the county commissioners are asking the court for leave to rescind, and for leave to make another sale. This brings us to the question: What authority does the court have in this matter? We must look for some statute giving us this authority. The proceeding is wholly statutory.

When real property is purchased by the county commissioners at a county treasurer's tax sale for delinquent county taxes, the county takes title to the property as trustee for the benefit of the several taxing bodies in proportion to their respective interests: Erie Appeal, 159 Pa. Superior Ct. 18; see also Benzinger Twp. Sch. Dist. v. Elk County, 50 D. & C. 449, Erie County's Appeal, 149 Superior Ct. 212, and Zerbe Twp. Sch. Dist. et al. v. Thomas et al., 353 Pa. 162.

A fiduciary relationship exists between the county and the taxing authorities in the instant case, as above stated.

Going to the Act of May 24, 1945, P. L. 944, 20 PS §§818, 819, we find a general act applying to the contract of any fiduciary and stating the public policy of the Commonwealth in respect thereof. Section 1 provides: "When a fiduciary shall hereafter make a contract not requiring approval of court, or when the court shall hereafter approve a contract of a fiduciary requiring approval of court, neither inadequacy of consideration, nor the receipt of an offer to deal on other terms shall, except as otherwise agreed by the parties, relieve the fiduciary of the obligation to perform his contract or shall constitute ground for any court to set aside the contract, or to refuse to enforce it by specific performance or otherwise: Provided, That this act shall not affect or change the inherent right of a court to set aside a contract for fraud, accident or mistake."

The constitutionality of this act was tested and upheld in Brereton Estate, 355 Pa. 45, decided September 30, 1946, in an opinion written by Justice Linn.

The Statutory Construction Act of May 28, 1937, P. L. 1019, defines a fiduciary to include a trustee. Courts have held the county a trustee in tax sales of this nature. Therefore, the same reasoning as in the case of Brereton Estate controls the case at bar.

By the Act of 1945, quoted above, the legislature has laid down the policy that a purchaser is entitled to protection, and that, when court approval of a contract of sale is not required, the contract cannot be rescinded, once made, save for fraud, accident or mistake; and where court approval is required, the contract cannot be rescinded once approval is given, save for fraud, accident or mistake.

Then we must decide that, under the cases, the county being a trustee for the taxing bodies, it cannot under the Act of 1945 be relieved of its obligation to perform its contract with respondent for the reason that the bid accepted was inadequate.

In our case the contract was made when the property was struck down to respondent. Court approval is not required under the Act of 1943 above.

Under the Act of 1943, which the county commissioners used in this case, a public auction is provided for.

"To complete an auction sale there must be a bidder, the property must be struck off or knocked down, and the person to whom it is struck off must complete his purchase by complying with the terms of the sale; but a sale has been said to be complete when the auctioneer announces its completion by the fall of the hammer or in other customary manner": 7 C. J. S. 1250, §7 (a).

"A bid is accepted when the auctioneer, by the fall of his hammer or by any other audible or visible means, signifies to the bidder that he is entitled to the property on paying the amount of his bid according to the terms of the sale; thus, acceptance may be in words or by appropriate acts": 7 C. J. S. 1254, §7 (e) (3).

In the case of Pennsylvania Co., etc., v. Broad Street Hospital, 354 Pa. 123, the court held, reversing the court below, that a mortgagor's right of redemption ends with the fall of the auctioneer's hammer at the sheriff's sale of the mortgaged land; that when the sheriff accepts a bid for land, the purchaser acquires a right to a deed on complying with the terms of sale.

Applying the law of public auctions to the instant case, the property was knocked down to respondent, his hand money was accepted and he was told a deed would be forthcoming. Respondent tendered the balance of the purchase price. All of these were "appropriate acts" to show acceptance of the respondent's bid and the summation of the sale.

A reading of the Act of 1937, which the county commissioners used in many cases, gave them wide authority in disposing of property bought at tax sale, and it gave the court, whose approval is required, great discretion in making a final order of sale. A reading of the Act of 1943, the amending act, on the other hand shows the legislature intended a final and complete disposition of the properties permitted to be subjected to the new procedure for the complete divestiture of liens of all types. This act required the commissioners to prepare for final disposition of their properties. They had to obtain amounts of liens and incumbrances and to fix an upset price sufficient to pay them, and above all, to sell a marketable title at any price.

Finally this act provides that the court shall order and decree that the property be sold free of liens and incumbrances to "the highest bidder" at the second and final public auction. This was all the court could do under the act.

There is no authority in this act given to the court to set the sale aside. There is no authority given to the commissioners to hold more than a second sale. There is no authority given to the court to give leave to hold any subsequent sales; and the Act of 1943 does

not require any return of the sale to the court, nor any application for leave to complete it or for confirmation of it.

A complete and thorough examination of this act shows the court's lack of authority to set aside the sale or to order another sale, or to review the price. It is not even contemplated.

After a careful consideration of the facts in this case and the law applicable thereto, the court makes the following

### Order

And now, December 4, 1946, the petition filed by the County Commissioners of Washington County is hereby dismissed, at the cost of the petitioners.