## Fleissner et al. v. Cook et al.

Before Gibson, P. J., Carson and Cummins, JJ.

*Wm. C. Porter*, for plaintiffs.

*Meyer Goldfarb*, solicitor, for City of Washington.

*Thomas L. Anderson*, solicitor, for School District of the City of Washington.

GIBSON, P. J., February 21, 1949.—Plaintiffs filed their complaint, under the Pennsylvania Rules of Civil Procedure regulating actions to quiet title, against the several defendants. The proceeding has been concluded as to all parties except the City of Washington and the Washington School District, who claim no interest in the title except as the holders of tax liens and tax claims against the real estate described in the proceeding.

Counsel for plaintiffs, for the City of Washington and Washington School District have filed a stipulation setting forth the facts agreed upon, and under these facts submit this case for a decision.

The material facts are: In 1940 the county treasurer of Washington County, at each of two sales, sold lots nos. 178 and 179 on Tyler Avenue, in the Clark

Place Plan, in the seventh ward of the City of Washington, to the county commissioners for sums equivalent to the county tax for the year 1930 and the county tax for the years 1931, 1932, 1933 and 1934. The county commissioners held title to these two lots until May 17, 1946, at which time, at a public sale held by the county commissioners as advertised, they sold these two lots, without any prior court order, to L. T. James for the sum of $175, which was not sufficient to pay all taxes which had been liened and accumulated prior to that time. L. T. James, on February 24, 1948, conveyed, by deed, these two lots of ground to plaintiffs.

From the proceeds of the sale, there was paid to the City of Washington the sum of $68.03, which was applied to the city taxes for 1930, 1931 and 1932, leaving a balance of $10.46 which was applied to city taxes for the year 1933.

From the proceeds of the sale, there was paid to the School District of the City of Washington the sum of $75.31, which was applied to the payment of school taxes for the years 1930, 1931 and 1932. This left unpaid: (a) The City of Washington tax liens and tax claims which have been revived from time to time, of a balance of 1933 taxes and full taxes for 1934 and all succeeding years to the date of sale; (b) school taxes due the School District of the City of Washington, represented by liens and tax claims filed, which have been revived from time to time, for the year 1933 and all years thereafter to the date of sale; also (c) a paving lien due the City of Washington, upon which judgment had been entered for $680.22, with interest thereon from October 11, 1928, and costs.

Plaintiffs seek by their proceeding to have the City of Washington and the School District of the City of Washington forever barred from asserting any right, lien, title or interest in these two lots incon-

sistent with the interests or claims of plaintiffs as owners.

The sole question to be determined here is: Did the delinquent tax sale by the county treasurer to the county commissioners, and their subsequent sale to L. T. James, divest the lien of unpaid taxes and paving lien of the City of Washington and the school taxes accruing prior to the date of sale to L. T. James and unpaid?

The procedure relating to tax sales by the county treasurer, the purchase thereof by the county commissioners, and their subsequent resale, is wholly statutory and the effect of such sales is determined by the acts of assembly relating thereto: Superior Mining Company Property Tax Sale, 359 Pa. 357.

The county treasurer made his sale in 1940. The basic Act of May 29, 1931, P. L. 280, relating to delinquent taxes on seated lands and authorizing the sale of lands by the county treasurer for delinquent taxes and authorizing the county commissioners to purchase and resell such land, had in the meantime been amended by the Act of June 20, 1939, P. L. 498. As amended, the county treasurer was authorized to sell real estate for the purpose of collecting delinquent taxes.

Section 9 of the Act of 1931, as amended, provided:

"Every such sale shall discharge the lien of every obligation, claim, lien or estate with which said property may have or shall become charged, or for which it may become liable, except no such sale shall discharge *the lien of any ground rent, municipal claim or tax remaining unpaid. . . .*"

Under section 10 of the Act of 1931, as amended by the Act of 1939, it was provided, "any such property, for which an amount sufficient to pay such taxes, interest, and the costs is not bid, shall be purchased by the county commissioners. . . ."

By section 16 of the Act of 1931, as amended by the Act of 1939, it was provided that as to property purchased by the county commissioners at a county treasurer's sale, an account should be kept charging the accumulated taxes each year to that particular property.

Under the express terms of this act and under the circumstances disclosed here, it became the duty of the county commissioners to purchase the property. What they purchased is determined by the express provisions of the act; that is, the title was divested of every obligation, claim, lien or estate *except the lien of ground rents, municipal claims, taxes remaining unpaid or mortgages* which had been recorded under certain conditions. Also, the title was subject to redemption under the terms of the act.

The county commissioners sold the property here involved in 1946, and, in the meantime, the Act of 1931 had again been amended by the Act of May 24, 1945, P. L. 945.

By the original Act of 1931, sec. 17, where the county commissioners had acquired real property at a county treasurer's sale for delinquent taxes, and this property had not been redeemed, they were required to sell the land at public auction and make a deed. The act specified what title they could convey by this language: "Such deed shall pass such title as the county commissioners have a right to convey."

Subsequent legislation, to wit, the Act of June 20, 1939, P. L. 498, amending section 17 of the Act of 1931, also provided for a private sale under certain conditions. This amending section also designated that property passing by such conveyance would be the same as in the Act of 1931.

By section 17 of the original Act of 1931, as amended by the Act of 1945, which was in effect at the time the

sale was made by the county commissioners, the county commissioners could sell, either at public sale or private sale (under the provisions of the Act of 1939), and convey by their deed, "such title as the county commissioners have a right to convey", or they could fix an upset price and make a sale under the provisions of section 17 of the Act of 1931, as amended by the Act of 1945, in which case the deed "shall pass title free, clear and discharged of all tax and municipal claims, liens, mortgages, charges and estates of whatsoever kind."

Under the amending Act of 1945, where an upset price is fixed, and the required amount is not bid, a certain procedure is provided, and if this amount is not realized then the act provides for a proceeding before the court to secure an order of sale, with the effect above indicated.

The effect of the different types of sales is clearly indicated by the legislature in this amended section 17 as set forth in the Act of 1945. After providing for the making and delivering of a deed by the county commissioners, the results are designated as follows:

"Where the sale is made without securing an order of court, as aforesaid, such deed shall pass such title as the county commissioners have a right to convey, but where the sale is made after securing an order, as aforesaid, such deed shall pass title free, clear and discharged of all tax and municipal claims, liens, mortgages, charges and estates of whatsoever kind."

The legislature has clearly distinguished the effect to be secured by the two types of sales. Where the sale is made without an order of court, the commissioners can convey only such title as they have a right to convey, namely, the title which they secured by sale from the county treasurer, which did not divest municipal claims or taxes remaining unpaid.

Where this land was purchased by the county commissioners at a county treasurer's tax sale, all of the taxing authorities to whom unpaid taxes were due acquired equitable interest in the land and the county held the land as trustee for the benefit of all the taxing authorities concerned: School District of Zerbe Township v. Thomas et al., 353 Pa. 162; Andrews Land Corporation's Appeal, 149 Pa. Superior Ct. 212; Erie Appeal, 159 Pa. Superior Ct. 18.

From this well established rule it is argued that the city and the school district could not enforce their tax claims against the property which the county commissioners had bought, and therefore when the county commissioners sold to L. T. James, all rights of the county, the city and the school district against this property had been exhausted. These cases do hold that after the county acquired property at tax sale, the city and school district could not proceed to again sell the property at tax sale for their respective tax claims because whatever title the county acquired was held in trust for the various taxing authorities. However, after the property had been sold by the county what was the situation? The trusteeship had ended and the parties were at liberty to proceed if they had any valid tax claims. As we have pointed out, the county commissioners acquired from the treasurer's sale the title to the lots discharged of all claims except the *lien of ground rents, municipal claims and taxes remaining unpaid.* That was the title which the county commissioners acquired and they, being authorized to sell at their general public sale, *such title as the county commissioners had the right to convey,* conveyed to L. T. James precisely the same title which they had purchased, which was a title subject to the lien of ground rents, municipal claims, taxes remaining unpaid and mortgages; and the purchaser, having taken

title subject to these particular liens, cannot now complain that those liens may not be enforced.

It is called to our attention that, as a part of the advertisement of the public sale where these two properties were sold to L. T. James, there was used the following language: "These sales are made without any guaranty as to any liens or encumbrances other than taxes, claims of the Commonwealth of Pennsylvania and municipal claims." It is argued that this was a representation to the purchaser that he was buying this property clear and discharged of tax liens and municipal claims. This may be so. However, as we have pointed out before, the procedure regulating tax sales and the effect of such sales is wholly statutory and if there was an apparent guarantee against taxes and municipal claims which the commissioners did not have any authority to make, it cannot be effective to relieve these properties from unpaid taxes and municipal claims.

We, therefore, hold that the liens for the unpaid taxes of the City of Washington and the School District of the City of Washington, and the municipal claim of the City of Washington, were not divested by the treasurer's sale for delinquent taxes and were not divested by the sale and conveyance by the county commissioners to L. T. James, and, therefore, as to all of those which are unpaid and have been properly revived or extended, they are valid liens against the property of plaintiffs.

And now, February 21, 1949, the complaint of plaintiffs, insofar as the same relates to the City of Washington and Washington School District, barring them from asserting any right, lien, title or interest in lots nos. 178 and 179 in Clark Place Plan of Lots in the seventh ward of the City of Washington, Pa., is hereby dismissed at the cost of plaintiffs.